## FLANAGAN v. SCOTT.

1. It is not essential to the legal sufficiency of an affidavit made for the purpose of carrying a case to the Supreme Court in forma pauperis that it should contain a statement that the affiant's "counsel has advised him that he has good cause for a writ of error." If such affidavit, either literally or in substance, clearly states that the affiant, because of poverty, is unable to pay the costs in the case, without adding conjunctively that he is unable to do anything else, it so far meets the requirements of the statute and of the rule of this court as to relieve the plaintiff in error from the payment of the costs.

2. The official report following the headnote announced by this court in *DeLoach* v. *Richards*, 94 *Ga.* 730, is erroneous and misleading, in that it fails to state the contents of the pauper affidavit with which the court in that case actually dealt. That affidavit averred that the plaintiff in error was "unable, from his poverty, to pay the cost and give the security for the eventual condemnation-money." The affidavit referred to in the report was filed too late for consideration, and therefore did not form the basis of the court's decision.

3. Though a bill of exceptions does not "contain" any evidence, but on the contrary "specifies" a brief of evidence which had been duly approved and made a part of the record, this court will not dismiss the writ of error merely because the certificate to the bill of exceptions states that it "contains" all of the evidence material to a clear understanding of the errors complained of, instead of stating, as would be more accurate, that it "specifies" all of such evidence.

4. Refusing to give in charge to the jury a request which contains such an expression or intimation of opinion as is forbidden by section 4334 of the Civil Code, or a request not fairly and accurately adjusted to the evidence bearing upon the point to which such request relates, is not cause for a new trial.

5. The evidence as a whole did not warrant the verdict rendered, and the ends of justice require another hearing.

Argued February 27, — Decided March 22, 1897.

Complaint on account. Before Judge Felton. Bibb superior court. April term, 1896.

John Flanagan and Dennis Flanagan were sued by Scott upon an open account made out to "John Flanagan & Son." Defendant pleaded, that plaintiff sold to Dennis Flanagan intoxicating liquor while he was intoxicated, during the year the account was made, at several different times, and has charged him large sums which defendant did not promise to pay or become obligated for. Plaintiff obtained a verdict for $76.50 principal, with interest from January 1, 1892. John Flanagan moved for a new trial, which was denied, and he excepted.

The motion was upon the grounds, that the verdict was contrary to law and evidence; and that the court erred in refusing to grant a nonsuit, and in refusing to charge, as requested by defendant: "If the plaintiff looked to both Dennis and John Flanagan to pay the debt after the promise of John Flanagan to answer for Dennis's debt, if any promise was made, then he could not recover of John Flanagan. If John Flanagan said, 'Let Dennis have whatever he wants, and if he don't pay for it I will,' then John Flanagan would not be liable for what Dennis bought." For the other facts see the opinion.

*M. G. Bayne*, for plaintiff in error.
*Smith & Jones*, contra.

Fish, J. There was a motion made in this case to dismiss the writ of error, upon two grounds. The first ground was that the writ of error ought to be dismissed, unless the plaintiff in error paid the costs in the case upon the call of the same in its order for argument, because the plaintiff in error, who had filed in the court below a pauper affidavit to avoid the payment of costs, failed to state in his affidavit "that his counsel has advised him that he has good cause for a writ of error." In his affidavit the plaintiff in error simply states that, because of his poverty, he is unable to pay the costs in this case. This motion was evidently based upon Rule 15 of this court, which provides that "No case in which cost is due will be heard (except by special order of the court) until the cost is paid; and if not paid when the case is called, the clerk shall so inform the court, whereupon the case will be dismissed." Was the cost due in this.

case? Unpaid costs in this court are due in all cases, "save where the pauper affidavit is filed in the clerk's office of the court below, and a certified copy thereof is transmitted to this court with and as a part of the transcript of the record, or, if no transcript is required, with the bill of exceptions." Rule 14 of the Supreme Court. What kind of a pauper affidavit does the rule refer to? The answer to this question is contained in these words of Rule 14, which immediately follow the above quotation: "This oath, to be effectual, must assert that the plaintiff in error is, because of his poverty, unable to pay the costs, and must not add conjunctively that he is unable to do anything else." This is in accordance with the act of 1881. See Acts of 1880–1, p. 120. There is nothing in the rules of this court, or in the statutes of the State, which requires that a pauper affidavit, which is made simply for the purpose of obtaining a hearing of a case in the Supreme Court without the payment of the costs in this court, should contain an allegation that the counsel for the plaintiff in error has advised him that he has good cause for a writ of error. If such affidavit, either literally or in substance, clearly states that the affiant, because of poverty, is unable to pay the costs in the case, without adding conjunctively that he is unable to do anything else, it so far meets the requirements of the statute and of the rule of this court as to relieve the plaintiff in error from the payment of the costs. In order for a bill of exceptions to operate as a supersedeas to the judgment in the court below, it is necessary for the plaintiff in error to comply with certain conditions prescribed by the statute. One way in which he may obtain such supersedeas is by filing an affidavit with the clerk of that court, "stating that he is unable, from his poverty, to pay the costs or give the security for the eventual condemnation-money, and that his counsel has advised him that he has good cause for a writ of error." Civil Code, § 5552. If no supersedeas is sought, it is neither necessary for him to state in his affidavit that he is unable, from his poverty, to give the security for the eventual condemnation-money, nor to allege that his counsel has advised him that he has good cause for a writ of error.

2. In support of his motion to dismiss the writ of error, the

defendant in error cites the ruling in the case of *DeLoach* v. *Richards*, 94 *Ga.* 730. The headnote in that case is, "The plaintiff in error not having paid the costs in this court, and the affidavit sent up with the record not conforming in terms to the act of September 27, 1881 (Code, § 4263), and counsel not having appeared in person when the case was called for argument, and not having sent up money with which to pay the costs, the writ of error is dismissed." Applying this headnote to the brief statement of the facts of that case made by the reporter of this court, the confidence with which the defendant in error cites that decision seems to be well founded. The official report following the headnote is, however, erroneous and misleading, in that it fails to state all the contents of the pauper affidavit with which the court in that case actually dealt. From the report it appears that the material portion of the affidavit of the plaintiff in error, which the court had under consideration, was, "that because of his poverty he is unable to pay the cost in the above stated case." Whereas the truth is that the affidavit which was before the court was one which averred that he was "unable, from his poverty, to pay the cost *and* give the security for the eventual condemnation-money." The affidavit referred to in the report was one that attempted to correct the fault in this affidavit, but it was filed too late for consideration, and therefore did not form the basis for the court's decision.

3. The second ground of the motion to dismiss the writ of error was, "because the bill of exceptions . . contains no evidence at all, and the judge's certificate does not state that it 'specifies all the evidence,' etc." The judge certifies that the bill of exceptions is true and "contains" all the evidence material to a clear understanding of the errors complained of. The bill of exceptions really "contains" no evidence whatever, but it "contains" a specification of a brief of evidence which had been duly approved and made a part of the record. In this sense only is the evidence material to a clear understanding of the errors complained of contained in the bill of exceptions. It is evident, therefore, that the word "contains" in the certificate was simply used (probably by

mere inadvertence) in the place of the more accurate word "specifies." As the meaning of the certificate, taken in connection with the bill of exceptions, is clear and unambiguous, this court will not dismiss the writ of error for a mere verbal inaccuracy therein.

4. There was no error in refusing to charge the written requests of the defendant in the court below. The request set out in the fourth ground of the motion for a new trial was: "If the plaintiff looked to both Dennis and John Flanagan to pay the debt after the promise of John Flanagan to answer for Dennis's debt, if any promise was made, then he could not recover of John Flanagan." John Flanagan contended that he made no promise at all to the plaintiff; while the plaintiff contended that John Flanagan agreed to pay for whatever goods Dennis Flanagan, his son, might purchase from the plaintiff, and that John's promise so to do was an original undertaking on his part and not a promise to answer for the debt of another, and therefore did not have to be in writing in order to bind him. This request assumed that, if any promise was made to the plaintiff by John Flanagan, it was "to answer for *Dennis's debt*"; and therefore contained such an expression or intimation of opinion as is forbidden by section 4334 of the Civil Code. Besides, if it had been given in charge, it would have excluded from the consideration of the jury the contention of the plaintiff that John Flanagan did promise to pay for such goods as Dennis might purchase from the plaintiff, and that such promise was an original undertaking on his part; in other words, that the promise of John Flanagan was to answer for *his own debt*, and not the debt of Dennis. The request to charge set out in the fifth ground of the motion for a new trial was not fairly and accurately adjusted to the evidence bearing upon the point to which it relates.

5. After a careful consideration of the evidence in the case, we are of the opinion that, taken as a whole, it did not warrant the verdict rendered, and the ends of justice require another hearing. Granting that the evidence of the plaintiff was sufficient to authorize the jury to find that John Flanagan had made a verbal promise to the plaintiff to pay for

whatever goods Dennis Flanagan might buy (upon which question we express no opinion whatever), it is very doubtful, from this evidence, whether all the items which go to make up the account sued on were purchased after this alleged promise. Certainly John Flanagan, in no view of the case, is responsible for the price of goods which Dennis purchased prior to this alleged promise. The copy of account attached to the petition is headed: "John Flanagan & Son, Account"; and the first item thereon is: "July 10. Brought forward from old book, $19.35." The account, which is composed of very many items, runs from that date up to and includes the 15th of the following January. The evidence is silent as to the time when the promise of John Flanagan was made. From portions of the plaintiff's testimony, it seems not unlikely that some of the goods charged for on the account may have been purchased by Dennis previous to the time when the conversation occurred between Bazemore, then the partner of the plaintiff, and John Flanagan, in which it is alleged the promise by John Flanagan to pay for what goods Dennis might buy was made.     *Judgment reversed.     All the Justices concurring.*