| 104 | 417 |
| 105 | 801 |
| 104 | 417 |
| 106 | 666 |
| 104 | 417 |
| 116 | 672 |
| 104 | 417 |
| 117 | 961 |
| 104 | 417 |
| 127 | 516 |

## WAGNON, trustee, v. PEASE.

1. A petition to foreclose a mortgage executed by a trustee, which sets out in full the terms of an order passed by a court of competent jurisdiction authorizing him to create a mortgage upon the trust estate, is good in form as well as in substance, in so far as it relates to the trustee's power to enter into a contract of this character. The validity of such an order is not affected by the fact that the trustee failed to attach to his application for leave to mortgage a copy of the trust deed or other instrument by which he was appointed. Nor is such an order to be treated as void because it fails to recite who are the beneficiaries of the trust; nor because the record of the proceedings upon which it was based does not affirmatively show that service upon all parties at interest was duly made. Such an order, because granted by a court of general jurisdiction, has all the sanctity which attaches to a formal judgment, and every presumption in favor of its validity is to be indulged. Accordingly, in the present foreclosure proceeding, it was not necessary for the plaintiff to allege or prove that the trustee was regularly and lawfully appointed, and therefore was entitled to apply for and obtain leave to execute the mortgage sought to be foreclosed.

(a) The order of court relied on in this case was not void for uncertainty.

2. Although such a mortgage may contain stipulations not authorized by the judge's order, the whole instrument is not for that reason void; and in a proceeding looking to an enforcement of the contract only in so far as it is legal, the notes and mortgage executed by the trustee in pursuance of the power conferred upon him by the order passed are admissible in evidence for the purpose of proving the contract as insisted upon; certainly so in the absence of any objection on the part of the defendant specially calling upon the plaintiff to offer the instruments for a specified purpose, or purposes, as to which, and to which alone, they were relevant.

3. In resistance to the foreclosure of a mortgage upon trust property it is competent for the trustee to interpose a plea of usury.

4. The trustee is also at liberty to attack the order of court authorizing the creation of the mortgage, on the ground that service of the proceedings upon which such order was based was not, in point of fact, made upon the cestuis que trust, none of whom had either waived service or subsequently ratified his act in executing the mortgage.

(a) Upon a review of the case of *Rutherford* v. *Larned*, 102 *Ga.* 50, the decision therein, in so far as it lays down the contrary doctrine, is overruled.

5. The trustee is, however, estopped from raising any issue concerning the legality of his appointment.

6. If, prior to the filing of the plaintiff's petition to foreclose the mortgage, the trust became executed, the proceeding should have been instituted against the former cestuis que trust instead of the discharged trustee.

Argued February 2, — Decided June 7, 1898.

Foreclosure of mortgage. Before Judge Felton. Houston superior court. April term, 1897.

*Hardeman, Davis & Turner,* for plaintiff in error.

*Guerry & Hall,* contra.

LUMPKIN, P. J.    The present controversy arose out of an effort on the part of William A. Pease to foreclose a mortgage assigned to him by James H. Tallman, which had been executed in favor of the latter by Mary V. Wagnon, as trustee for certain named persons.    The plaintiff's petition was dismissed on general demurrer, and, upon exception taken, the judgment of the court below was reversed.    See 93 *Ga.* 361.    The case again coming on for a hearing, the defendant interposed a special demurrer, the effect of which was to call for more specific allegations concerning the authority of the trustee to execute the mortgage and the manner in which the alleged charge against the trust estate had been created.    In response, the plaintiff amended his petition by attaching thereto certain exhibits, setting forth an application made by the trustee for leave to mortgage the trust property in her hands, and disclosing the action thereon taken by the judge of the Macon circuit, who passed an order authorizing a mortgage in the sum of $1,000.00 to be executed in her name, as trustee.    No attempt was made, however, to meet the further objections raised by the demurrer, that the plaintiff had failed to attach as an exhibit a copy of the trust deed under which the defendant held the trust property mortgaged, or to set out the terms of the trust and annex the order under which she was appointed trustee.    The trial judge held, in effect, that it was unnecessary to do any of these things, and exception to this ruling is taken.

To the petition as amended the defendant demurred, (1) because no cause of action was set out; (2) because it appeared upon the face of the record that the order authorizing defendant, as trustee, to mortgage the land was void, as there had been no service upon the cestuis que trust and they were not parties to the proceeding; (3) because the order did not set out for whom defendant was trustee, but referred to another paper to show whom she represented, which paper was not attached as an exhibit; (4) because the order was void for the reason that it did not show for whom defendant was trustee; (5) because the mortgage given by the trustee

did not conform to the order of the court, in certain specified particulars, and was not such a mortgage as the trustee was under the order authorized to make; and (6) because, as to four of the cestuis que trust, designated by name, the mortgage was void, they never having been served with, nor having acknowledged service of, the petition to create a mortgage on the trust estate, and never having waived service or ratified the mortgage. This demurrer was also overruled, and the defendant excepted.

By plea the defendant set up the following defense: In February, 1885, at the intercession of her son, Hardeman Wagnon, she procured a loan through R. F. Lawton, giving a mortgage upon certain trust property. She was a widow, advanced in years, utterly unfamiliar with law and all the forms thereof. Her son Hardeman represented to her that his father, her deceased husband, owed him $600. Hardeman was then in charge of the plantation which was subsequently mortgaged to James H. Tallman, and represented to her that if she would allow him to borrow the money, it would be repaid by the revenue of the farm. In the utmost good faith she consented, and, without meaning to wrong her minor children or supposing that by her acts she would wrong them, signed the papers which were executed. At the time of the mortgaging of the land, four of her children were minors, viz., Harry W., Mary Luta, Maggie D., and Ovid S. Wagnon. Hardeman Wagnon was appointed guardian ad litem for these minor children. The order of the court appointing her trustee provided that, before she exercised the duties of the trust, a good and sufficient bond, to be approved by the ordinary, in the sum of $1,500, should be filed in the office of the ordinary of Houston county. No bond was ever filed, except one which the ordinary refused to approve. Under these circumstances, $814.10 was paid to Hardeman Wagnon, as agent of Mary V. Wagnon, trustee, of which money neither she as trustee, nor any of the cestuis que trust, ever received a cent, $600 of it being paid upon the debt owed by her husband to Hardeman Wagnon, and the remainder being lost by the latter in cultivating the farm during that year. She is now advised that the mortgage so given was a fraud upon the rights of the minor children, who were never served with a

copy of the petition to appoint her trustee nor with a copy of her application to mortgage the property, and were never legally represented in court. Furthermore, the contract upon which plaintiff sues is usurious. The note given was for $1,000, but she never received but $814.10, and $185.90 was deducted from the $1,000 under the pretense of commission, the same being an attempt on the part of the lender to evade the usury laws of Georgia and the $185.90 being really reserved and charged as interest on the $1,000 in addition to eight per cent. per annum from the date of the note given for the $1,000. The amount so charged was usurious and should be deducted from plaintiff's demands or set off against the same. Besides, plaintiff is suing for the interest on said claim from February 4, 1890, whereas defendant has already paid on the note $160 as interest, which amount should be allowed as a credit on the note. By the terms of the deed creating the trust estate, no power or authority was conferred upon the trustee to create any lien or encumbrance upon the lands of the estate, and the order authorizing the defendant to mortgage the lands was void because the beneficiaries of the trust were not parties thereto, never having been served with a copy of the proceedings, nor waived service, nor ratified the order; and neither they nor the trust estate ever received any of the benefits of the mortgage, nor did they authorize the defendant to make a mortgage, nor did they ratify the same. Nor was defendant legally appointed trustee of any of said cestuis que trust. She was not appointed trustee by the instrument creating the trust estate, and has never since been appointed as trustee by any power in the instrument creating the trust estate, nor by any court having jurisdiction of the trust and of the beneficiaries, by reason of failure to serve the beneficiaries. Moreover, defendant has never qualified as trustee, nor given any bond approved and accepted as required by law, nor have the beneficiaries waived any of these requisites, or recognized defendant as trustee, or ratified any of her acts as such, especially the note and mortgage, or received any benefit therefrom, all of which was known to Tallman at the time of taking the mortgage. The trust estate was created by a deed from T. J. Harris to W. W. Wagnon, defendant's hus-

band, conveying a designated portion of the land in question, dated September 6, 1862, and by a deed from E. W. Jackson to said W. W. Wagnon, to the rest of the land, dated October 7, 1874; and by the terms of these instruments creating the trust, W. H. Wagnon, who died in 1884, was appointed trustee, and a trust was created only during the minority of the children of defendant. Accordingly, defendant pleaded in bar to the foreclosure, that upon the arrival at majority of all these children, which had occurred prior to the granting of the rule nisi, the trust had become fully executed and the defendant's trusteeship had terminated, in consequence of which she was not clothed with any authority to represent any of the cestuis que trust in the present proceeding.

The plaintiff orally demurred to the pleas filed by defendant, setting forth the above-recited allegations of fact, on the ground that she was estopped from insisting upon the defenses therein set up. The trial judge sustained the plaintiff's demurrer and struck the pleas, upon which ruling the defendant now assigns error. The case then proceeding to trial upon its merits, the plaintiff offered in evidence the petition of the defendant for leave to mortgage, with the various entries thereon, and the order passed by the judge authorizing her to mortgage the trust estate. To the introduction of this evidence the defendant objected on the ground, that the petition did not set out a copy of the instrument creating the trust estate, nor did it specify the terms of the trust nor show that she was the trustee of the beneficiaries, nor did the order thereon set out all the powers, terms and stipulations which the contract should contain; and further, because it appeared from an inspection of the record that four of the cestuis que trust, designated by name, had never been served with the petition, had never waived service thereof, were minors at the time, and therefore the order of the court authorizing the trustee to mortgage the land was not binding upon them. The court overruled each and all of these objections and admitted the evidence, and to this ruling the defendant also excepts. The plaintiff then tendered in evidence the note and mortgage upon which the foreclosure proceeding was based. To their introduction the defendant interposed the fol-

lowing objections: Neither of these instruments was in any manner a compliance with the order of the court authorizing a mortgage upon the trust property; said order only authorized the borrowing of money at seven per cent. interest, whereas the note and mortgage stipulated that eight per cent. should be paid; the order did not authorize the borrowing of the money for a term of years, but the note and mortgage contained a stipulation that the money should become due five years from date, with interest thereon payable semiannually at eight per cent., and on failure to pay any of the coupon notes the whole principal should become due; further, the trustee obligated herself "to pay interest on said coupon notes," and also ten per cent. attorney's fees in the event the note and mortgage had to be collected by law, both of which provisions were in violation of the order, as was also the stipulation that, on default of payment of any of the interest notes, the whole principal and interest was, at the option of the holder, to become due at once; and lastly, because no authority was shown for the trustee to execute the note and mortgage, so far as the minor beneficiaries were concerned. Exception is taken to the overruling of these several objections.

The plaintiff then admitted in open court that the defendant had been charged $120 as commission on the loan, and had also paid the coupon interest notes of $40 each, due, respectively, on August 1, 1885, February 1, 1886, August 1, 1886, and February 1, 1887. Thereupon the plaintiff closed, and the defendant moved a nonsuit on the ground that the plaintiff had not made out any case against the defendant as trustee of any of the cestuis que trust,—certainly not as to any of the minor beneficiaries. This motion was overruled, which action on the part of the court is also made the subject-matter of exception. No evidence was introduced by the defendant. The court ruled that the plaintiff was entitled to have the mortgage foreclosed only for the amount actually received, with interest thereon at seven per cent. per annum, and directed the jury to find for the plaintiff $880 principal, and $483 interest to date, and that the mortgage be foreclosed against the defendant as trustee of all the cestuis que trust. To this the defendant excepted. In

dealing with the various questions thus presented for our determination, we will endeavor to classify the same into what appears to be their logical order, without regard to the precise manner in which each was raised in the court below. For convenience, we will in the first place view the case in the light of the pleadings and evidence upon which it was actually tried, without at the same time attempting to pass upon the merits of the pleas filed by the defendant which she contends were erroneously stricken. The bearing upon the case of the defenses thus sought to be set up will then be considered and discussed.

1. As was held when this case was here at the October term, 1893, the plaintiff's petition, as originally filed, was good in substance, and its defects in mere matter of form were open to correction by simply amplifying its allegations with respect to the terms of the order of court upon which Mrs. Wagnon based her authority, as trustee, to execute the mortgage sought to be foreclosed. Upon the hearing now under review, the plaintiff amended his petition by attaching thereto a copy of the proceedings under which this order was granted, as well as a copy of the order itself, which was as follows: "At chambers, February 4, 1885. Upon considering the foregoing petition, it is ordered by the court that the trustee, Mary V. Wagnon, has been and is hereby authorized to create a mortgage upon the property of the trust estate hereinbefore set out, for the purpose of securing a loan for the sum of one thousand dollars; and that these proceedings be entered on the minutes of Houston superior court. [Signed] T. J. Simmons, J. S. C." The petition referred to in this order was an application made by Mary V. Wagnon, as trustee for certain named cestuis que trust, for authority to execute a mortgage in the sum of one thousand dollars on the property covered by the trust, a description of which was given, which sum she represented was necessary to pay outstanding debts against the trust estate and to provide a support for the beneficiaries thereof. The petition prayed that a guardian ad litem be appointed to represent certain named cestuis que trust who had not attained their majority; and by an order of court, a copy of which was attached to the plaintiff's declaration, it appears that W. W. Wagnon was appointed

as such guardian to represent these minors. No entry showing service upon any of the cestuis que trust appears to have been made upon the petition to mortgage, although a copy of a paper purporting to have been signed by all the beneficiaries who were of age, evidencing their consent to the creation of a mortgage in the sum stated, was attached as constituting a portion of the record of the proceedings upon which the order of the court was predicated. The plaintiff in error contends that the application for leave to mortgage, presented by the trustee, was defective and incomplete in that she failed to attach as an exhibit thereto the deed of trust or order of court by virtue of which she claimed to have been appointed trustee. Granting this to be true, the order passed by the court is not therefore to be considered as having no validity, for certainly the application was good in substance and fully warranted the action taken in the premises, if, as we are bound to assume, the judge granted her application only after a proper showing on her part that she was in fact the legally appointed trustee of the persons enumerated therein. It was further insisted that this order was void because it did not designate the beneficiaries of the trust estate represented by the trustee. There is no merit in this contention, for the reason that this order is to be read in connection with the proceedings upon which it was based; and as the application made by the trustee sets forth the names of the beneficiaries of the trust, there would seem to be no occasion for reiterating this recital in the order itself, which in terms refers to the application and in this manner affords all needful information upon the subject.

Again, this order is attacked as void on the ground that as the record of the proceedings had before the judge does not show upon its face that service was perfected upon any of the cestuis que trust, and as there was, certainly, no waiver of service by the minor beneficiaries, it follows conclusively that there was no service. If this conclusion of fact necessarily resulted from the premises stated, the particular contention now under consideration would undoubtedly be a good one. But, as will have been observed from the above statement of what this record shows, the real truth of the matter is, that while it

does not affirmatively appear that service was in fact duly made, there is absolutely nothing going to show the contrary. In other words, the record is merely silent as to this point. This being so, everything is to be presumed in favor of the validity of the order of court, which, as was ruled when this case made its first appearance here, is to be regarded as having all the sanctity which attaches to a formal judgment rendered by a court of general jurisdiction. It follows, of course, that in the absence of proof showing a failure to serve the parties interested in the proceeding, the presumption would be that every one to be affected thereby was properly before the court, else the order would not have been passed.

Still another objection urged against the validity of the court's order is that it was too indefinite. As was said in *Bolles* v. *Munnerlyn*, 83 *Ga.* 733, we are of the opinion that "when a chancellor is applied to by a trustee for authority to encumber the trust property, he should set out in his order all the powers, terms and stipulations which the contract should contain. By doing this he will put the trustee and the other party to the contract upon notice of the exact terms upon which the contract can be made, and thus prevent litigation of this kind." We do not, in the present instance, however, feel warranted in saying that the order passed by the chancellor was void for uncertainty. It did not, it is true, provide for certain stipulations which are frequently incorporated, for the better protection of the lender, in mortgages of the present day; but its silence in this respect is to be regarded merely as negativing the right of the trustee to agree to such stipulations, not as equivalent to a practical denial of power to mortgage at all. In other words, we think the trustee was fully empowered by this order to execute a mortgage the effect of which would be to create a lien upon the trust estate in favor of a lender willing to part with his money upon this security and to await the end of the term for which the loan was made before taking any steps to foreclose the mortgage, regardless of whether accruing interest was, or was not, promptly paid when due. To establish a lien upon the property offered as security is the primordial object and purpose of such an instrument. Stipu-

lations other than those looking to this end are not to be deemed essential to the creation of a mortgage full and complete in all its parts.

Upon the whole, our conclusion is that the plaintiff's petition, as amended at the last trial, set forth a good cause of action, and that the evidence offered in support thereof made out a prima facie case in his behalf. It was not necessary that he should go further and allege or prove that the trustee who executed the mortgage was regularly and lawfully appointed and therefore authorized to enter into a contract binding upon the trust estate. Indeed, as we shall endeavor to show before concluding this opinion, no issue upon this point could properly be raised in the present proceeding, as Mrs. Wagnon would be estopped from setting up that she had never been legally appointed trustee and in consequence was without authority to sign the mortgage in the capacity in which she had assumed to act.

2. We agree with counsel for the plaintiff in error that the mortgage executed by the trustee does not conform to, and can not be said to have been fully authorized by, the order passed by the judge. Indeed, as is pointed out by counsel, this mortgage contains many stipulations wholly unauthorized, and therefore inoperative. But while this is true, the effect of these unwarranted stipulations is not to render entirely void an instrument which, stripped of all objectionable terms, would still present a full and complete contract capable of enforcement. As is true of contracts generally, the whole body of this one need not to be destroyed simply because one or more of its parts require elimination. Such was the view entertained and expressed by this court when dealing with a similar instrument in the case of *Bolles* v. *Munnerlyn,* supra. There it appeared that, among other wholly unauthorized stipulations contained in the mortgage executed by the trustee, he had agreed with the mortgagee that upon default in paying any one or more of the semiannual interest notes, the whole principal should, at the option of the latter, become immediately due and payable. Upon this stipulation the plaintiff in that case predicated his right to foreclose the mortgage, the term of five years for which

the loan was made not having expired when suit was commenced. He accordingly offered the notes and mortgage in evidence, but they were rejected. In disposing of the question thus presented, it was held by this court that no error was committed, as the papers contained nothing, outside of a stipulation which was clearly invalid, going to show any right on the part of the plaintiff to foreclose the mortgage prior to the expiration of the full term for which the loan was made. In this connection, it was also stated that this court was not to be understood as holding that these instruments were void; but on the contrary, although they contained certain stipulations which were nugatory, there would seem to be "no reason why the plaintiff should not be allowed to recover the principal and interest which the trustee was authorized by the decree to borrow from him," provided he waited until the full term of five years had expired before bringing his action.

The case just discussed is relied on by the plaintiff in error in support of her contention that, in the present case, the trial judge committed error in allowing the note and mortgage declared upon to be introduced in evidence, although neither of these instruments had been drawn in exact conformity to the order of court by virtue of which power to mortgage the trust estate was asserted. It is, however, to be observed that in the case at bar the papers in question were not offered for the purpose of showing a right on the part of the plaintiff below to insist on any stipulation not covered by the chancellor's order, but merely with a view to making it appear that the power conferred upon the trustee had been exercised by her in the manner indicated by these instruments. The plaintiff was not basing his right to foreclose the mortgage on the ground that it contained a stipulation providing that the principal should become immediately due upon default in paying the interest on the loan. On the contrary, suit was not instituted until after the full term for which the loan was made had expired, and the plaintiff merely relied upon the mortgage in so far as it constituted a lien upon the property therein described. The mortgage itself was the best evidence of its contents and the fact of its execution. Clearly, for the purpose for which they

were offered, the notes and mortgage declared upon were admissible in evidence, notwithstanding the defendant's objection that they contained certain stipulations not authorized by the judge's order. The recitals therein fully identified them as the instruments which the trustee actually executed in pursuance of the power conferred upon her by that order. We understand the defendant's objection to the evidence in question to have been that these instruments were not identified as those alleged to have been executed by the trustee under the order passed by the court, because they appeared on their face to have no connection therewith, not having been drawn in conformity thereto. If, however, the defendant really intended to concede that the evidence thus offered was to a certain extent relevant, and merely wished to prevent its consideration for any illegal purpose, the court, upon proper presentation of the point, should have required the plaintiff to tender the evidence for legitimate purposes only.

We have, in the foregoing discussion, endeavored to dispose of all the questions raised on the trial, save those presented by the pleas of the defendant which were stricken by the court on the ground that she was estopped from urging the defenses therein set up. The merits of each of these several defenses will now be considered with reference to the objections thereto by which they were, respectively, met by the plaintiff.

3. As will have been seen, the defendant in the most unequivocal terms alleged that the lender never in fact parted with more than $814.10 of the $1,000.00 pretended to have been loaned, $185.90 having been deducted therefrom under the pretense of commissions, in addition to the maximum legal rate of interest. Such a transaction was certainly usurious; and upon what theory the defendant can be said to be estopped from filing a plea of usury we are at a loss to perceive. The fact that the plaintiff voluntarily admitted in open court that the defendant had been charged $120 as commissions on the loan, which amount as shown by the verdict was deducted from the principal sum sued for, obviously could not cure the error committed by the court in striking this plea; for even then the recovery in the plaintiff's favor was entirely too large, if the facts were as insisted upon by the defendant.

4. It is unquestionably true, as was further contended by the defendant below, that in order to authorize the granting of an order by a judge conferring power upon a trustee to mortgage trust property, service of the proceedings must be made upon, or waived by, the cestuis que trust. Whether or not, in the present instance, Mrs. Wagnon is to be deemed estopped from raising any issue concerning the legality of the order which she, in her representative capacity, procured and acted upon, is by no means, however, a question so easy of decision. If the doctrine laid down in *Rutherford* v. *Larned,* 102 *Ga.* 50, is correct, this question is to be answered in the affirmative; for it was in that case ruled that: "Where a trustee, under an order granted upon his own application by a judge of the superior court, borrowed money with which to pay off existing liens on land alleged to be held by the applicant in trust, and secured the payment of the loan thus made by a mortgage on the land, as by such order authorized, the successor of that trustee could not set up, as a defense to a proceeding by the lender to foreclose such mortgage, that the order in question was void because of a disqualification on the part of the judge to grant it, or on any ground necessarily passed upon by the judge in granting the order. Even if the alleged disqualification existed, or there was any other reason why the order should not in the first instance have been granted, and if as a consequence it was open to attack by a person authorized to make it, the original trustee was estopped from so doing, and his successor, as to this matter, occupies no better footing." The theory upon which we rested our decision in that case was, that, in applying for leave to mortgage the trust estate, the applicant acted in behalf of all the persons for whom he was trustee and in so doing represented their interests; and that, consequently, if he failed to avail himself of the opportunity then presented of objecting to the legality or regularity of the proceedings had upon his petition, he, and all whom he represented, would be thenceforth precluded by the judgment rendered, so long as the same remained of force. Counsel for the present plaintiff in error requested us to reconsider that decision, and we granted the necessary leave to bring it under review.

We candidly confess that the very able argument presented to show its unsoundness has, in connection with misgivings previously felt, convinced us that the doctrine of that case is wrong; for if, as was ruled in *Clark* v. *Flannery & Co.*, 99 *Ga.* 239, it is the duty of a trustee to raise in behalf of the cestuis que trust every proper defense which can be urged in resistance to an action brought against him in his representative capacity, and a judgment rendered against him will be conclusive upon them notwithstanding his failure to observe this duty, how can the beneficiaries of a trust estate ever raise the question that they were not served and had no notice of the proceeding upon which an order authorizing the trust estate to be mortgaged was based, if the trustee is estopped from setting up this defense to the foreclosure of a mortgage executed in pursuance of such order? We find no satisfactory response to this inquiry, and are therefore satisfied that we fell into error when dealing, on the former occasion alluded to, with this somewhat perplexing subject. The best and the only proper way of disposing of erroneous rulings is to promptly recall them when the opportunity for so doing is presented. We are, of course, sorry that in spite of all our care we can not avoid making mistakes; but we would be more than human if all our judgments were faultless. As we can not hope to be always right, it should be, and is, our pleasure, as well as our duty, to come back to the true law whenever convinced that we have departed from it. After anxious and earnest deliberation, we now feel sure that we were not warranted in treating the trustee who applied for and obtained the order then under consideration as the representative of the beneficiaries in the institution and prosecution of the proceeding brought for the purpose of investing him with authority to mortgage the trust estate.

To create a mortgage upon trust property is not within the powers conferred by law upon a trustee to be exercised at his discretion. Section 3186 of the Civil Code declares in express terms that "trustees are not authorized to create any lien upon the trust estate except such as are given by law"; and, as was pointed out by Chief Justice Bleckley when this case was here at a previous term, "the law, without some preliminary order

granted by the proper judge of the superior court in the exercise of his equitable jurisdiction, does not enable any trustee to create a lien by mortgage." See 93 *Ga.* 362. This court, by a majority decision, first held that a judge had no power at chambers to grant to a trustee authority to mortgage trust property. *Iverson* v. *Saulsbury, Respess & Co.*, 68 *Ga.* 790. This ruling was disapproved in *Weems* v. *Coker*, 70 *Ga.* 746, and the contrary doctrine established. This latter decision has since been followed. *Bolles* v. *Munnerlyn*, supra, and other cases. The power to authorize a mortgage is seemingly derivable from the greater power to authorize a sale. If, then, an emergency arises, which can not be successfully met in some other and better way, the trustee may very properly bring to the attention of the judge the necessity which exists of borrowing money and securing the repayment of the same by mortgaging in whole or in part the trust estate. To this end, the trustee may present his petition, fully setting forth the facts and praying that he be granted the necessary power in the premises. The law does not contemplate, however, that the trustee shall have power to bind the cestuis que trust by such a statement on his part of the exigencies of the case. On the contrary, section 4865 of the Civil Code, which must be regarded as applicable, since the power to allow a trustee to create a mortgage is included in the power to permit him to make a sale, expressly provides, as to cases of this nature, that "where any person is interested besides the applicant, notice to such person must be shown, or its absence accounted for, before the court shall proceed in the cause"; and section 4866 declares that "if minors are interested, and they have no guardians, guardians ad litem must be appointed and notified before the cause proceeds." Thus it will be seen that the beneficiaries must themselves be properly brought before the court, which would be an entirely useless formality, if not an absurdity, if the trustee were authorized to represent them in the proceeding. That he is not, is further evidenced by the provision requiring the appointment of guardians ad litem to represent the minors at interest; for it is inconceivable why this should be necessary, except upon the theory that otherwise the minors would be without representa-

tion.    Doubtless, our statute contemplates that the chancellor shall not regard the trustee as having any power to represent the cestuis que trust with respect to a matter clearly outside of the scope of his general authority, and shall allow the persons to be affected an opportunity to be heard in resistance to the application whereby the trustee seeks a power which the law, in its wisdom, withholds from his exercise and vests with the court to be jealously guarded.    Certainly, it would be competent for such of the beneficiaries as were of age and who appeared and represented themselves to make a counter-showing, if the facts set up by the trustee in his petition were untrue, and thus defeat his object.    And would it not be the solemn duty of a guardian ad litem appointed to represent a minor beneficiary to zealously endeavor to ascertain whether the proposed step might not, in point of fact, be prejudicial to the interests of his ward, and, if so, to take every proper step to protect him?    The truth of the matter is, an application to a judge for power to mortgage would be a mere empty formality, if the trustee were allowed to represent the cestuis que trust therein and make to appear to the court only such a view of the situation as suited his purpose.    In that event, the discretion reposed in the judge might oftentimes avail the beneficiaries nothing; for he could not be expected to exercise this discretion wisely and well if misinformed or imposed upon; and, looking to practical results alone, power to mortgage at pleasure might as well have been in the first instance vested directly in the trustee himself.

It follows that if, without any notice to the cestuis que trust or opportunity to be heard, an order is passed authorizing the trustee to mortgage the trust estate, which he subsequently does, their first and only chance to attack the validity of the order will be presented when the mortgagee institutes his foreclosure proceeding.    This they could unquestionably do were they in person before the court instead of through their representative appointed by law to defend the action in their behalf.    Why may not this representative, standing in their place, likewise raise this defense?    Can the doctrine of estoppel, by being aimed at him, because of his own unworthiness and infidelity to his trust, be practically turned against innocent wards, and as a

result their rights be utterly defeated? It is provided in section 3203 of Civil Code that one seeking to enforce a claim against a trust estate must set forth in his petition "the name or names of the trustees and the cestui que trust." As is evident from a casual reading of the following section, however, the trustee alone is to be considered the defendant to the action, unless "he is a mere naked trustee and non-resident in the county," in which event the "cestui que trust shall be made the defendant, and the proceedings shall be, in all respects, the same as when the trustee is defendant." In no event is it contemplated that the trustee shall incur any individual or personal liability in such a suit. On the contrary, section 3206 expressly declares: "The judgment thus rendered shall impose no personal liability on the trustee, or in any way render his property liable for the payment of the same; but said judgment shall only bind such trust estate, and execution shall issue accordingly." It will therefore be seen that he is a mere nominal party, so far as personal interest in the suit is concerned, charged with the duty of defending the action, not in his own behalf, but in behalf of the cestuis que trust. If he fails properly to discharge this duty, he is liable to them in damages.

Formerly, under the English practice, it was deemed necessary, in order to effectually cut off the equity of redemption, that all persons having an interest, legal or equitable, in the mortgaged premises should be made parties to a foreclosure proceeding; and accordingly, when a mortgage upon trust property was sought to be foreclosed, not only the trustee, but the cestuis que trust as well, were necessary parties defendant. Where the persons interested were numerous, this rule frequently resulted in serious embarrassment and inconvenience; and, doubtless for this reason, it has in Georgia, as above shown, been changed by statute. This explains why a trustee is called upon to assume the peculiar position he now occupies in this class of litigation. A similiar, though somewhat anomalous, state of affairs would exist if, by statute, it were provided that in all cases where a principal was sought to be charged with the acts of his agent, suit should be brought against and defended by the agent, instead of the principal himself. Suppose the latter's

defense was that his agent was not acting within either the real or the apparent scope of his authority.   If defending the case in person, surely the principal would not be estopped from interposing such a defense; and it must necessarily follow that his rights should not be considered prejudiced or defeated simply because the law appointed his unworthy agent to defend him. The doctrine of estoppel, being purely and essentially a rule of conscience, is peculiarly personal in its application, and looks alone to the real party to be affected, not to the medium through which he pleads his cause.   The same reasoning is applicable to a case in which the cestuis que trust are sought to be reached through a suit which the law directs shall be instituted against the trustee.   If the latter has overstepped his authority, which the law plainly points out so that every one dealing with him may accurately measure the extent thereof, it is the right of the beneficiaries to set up this fact.   For instance, without any pretense of securing an order of court, a trustee may undertake to mortgage the trust estate, or, what is equivalent, he may improperly execute a mortgage under a claim of right based upon an order of court which is totally and palpably void.   In either event, his act would not bind the cestuis que trust, and an opportunity should be afforded them of repudiating the same.   We therefore conclude that the true rule to be applied in such a case as the present is, that the trustee is not estopped from setting up in his character as trustee any defense which the cestuis que trust, were they in person defending the action, might properly urge in their own behalf.   An illustration going to show that the law invariably, so far as estoppels in pais are concerned, looks to the real parties at interest rather than to the nominal parties before the court, is furnished by the case of *Gouldsmith* v. *Coleman*, 57 *Ga.* 425. There it was held that where a widow unlawfully delivered to a creditor property belonging to her deceased husband's estate, she was not thereafter estopped, upon qualifying as administratrix, from bringing trover to recover the property, the court saying: "She is not estopped, as administratrix, by the prior unlawful sale made by her as an individual."   Likewise, in *Knorr* v. *Raymond*, 73 *Ga.* 751, it was ruled that "where one

who held the title to realty as trustee for certain minors made a deed thereto as an individual, this did not estop him as trustee from bringing suit against the purchaser" to recover the premises. In this connection see, also, the discussion of this subject and authorities cited in *Wilkins* v. *McGehee*, 86 *Ga.* 771, where "the wide difference between estopping one who acts as an individual and one who acts in a representative capacity" is clearly pointed out.

Before concluding upon this branch of the case, it is proper to add, that while we do not adhere to the broad doctrine laid down in *Rutherford* v. *Larned*, we must not be understood as now expressing the opinion that the defense therein set up was one which the trustee should have been allowed to urge. On the contrary, we firmly believe that, under the facts of that case, as presented by the record, it was correctly decided. An examination of that record discloses that the trustee's answer to the foreclosure proceeding contained nothing even remotely suggesting that the cestuis que trust had not been duly served with the application to mortgage, or had not had their day in court when the same was heard and the order giving the trustee leave to mortgage was granted. The trustee in defending the foreclosure proceeding based his attack upon that order on other and entirely distinct grounds. For aught that appeared in his answer, the beneficiaries had been accorded full opportunity to urge and insist upon these very grounds while the trustee's application to mortgage was pending before the judge. Clearly, if they had, and failed to improve, such opportunity, they could not thereafter be heard to complain. Giving the defense set up by the trustee its fullest scope, it did not negative the proposition that the beneficiaries had just such an opportunity. For the purposes of the *Rutherford* and *Larned* case, it should therefore have been assumed that they had; and accordingly, even if they had been called upon to resist in person the foreclosure of the mortgage, their lips would have been effectually sealed as to this matter, and, being themselves estopped from urging such a defense, the trustee through whom they appeared in court could occupy no better footing.

5. This brings us to a consideration of the question whether

or not Mrs. Wagnon could also urge the defense that she was not a legally appointed and duly qualified trustee. The general rule is, that a mortgagor is estopped from setting up, in resistance to a foreclosure proceeding, that he had no right or title to the mortgaged premises. *Boisclair* v. *Jones*, 36 *Ga.* 499; *Allen* v. *Lathrop & Co.*, 46 *Ga.* 133; *Usina & Jones* v. *Wilder*, 58 *Ga.* 178; *Sutlive* v. *Jones*, 61 *Ga.* 676; *Hall* v. *Davis*, 73 *Ga.* 101; *Mims* v. *Wright*, 78 *Ga.* 12. We see no reason why this rule should not govern in the present case. It is true, as above pointed out, that the real parties at interest being the beneficiaries of the trust estate, the doctrine of estoppel should not be given an application which will unjustly operate to their prejudice. But only upon the theory that Mrs. Wagnon is their trustee, and therefore authorized to represent them in this litigation, can she set up any defense in their behalf; whereas, if she is not, and they have never recognized her as such, they can not be hurt, for the reason that they will not be bound by any judgment which may be rendered against her. Not until the plaintiff succeeds in having his mortgage foreclosed will he be in a position where he can contest with them this issue, and he is clearly entitled to be placed in a situation which will enable him to do so. He certainly can not be required to litigate as to this matter with a person who necessarily admits, when she raises the issue, that she has no authority to represent them on the trial thereof.

6. If, as the defendant pleaded in bar to the action, the trust estate was created to continue only during the minority of her children, and all of them had attained their majority prior to the filing of the plaintiff's petition, the conclusion is irresistible that, as the trust had thus become fully executed, she was no longer authorized to represent the beneficiaries, in this litigation or in respect to any other matter affecting their interests. It would necessarily follow that the present proceeding against her is not maintainable, as it should have been brought against the beneficiaries themselves, in whom, immediately upon the termination of the trust, vested the legal title to the mortgaged premises. The objection that the defendant was estopped from setting up this defense is entirely without merit.

*Judgment reversed. All the Justices concurring.*