MANCHESTER *v.* THE STATE.

122

No. 7540.   JULY 30, 1930.   REHEARING DENIED OCTOBER 4, 1930.

*R. D. Feagin* and *J. W. Schell,* for plaintiff in error.

*Charles H. Garrett, solicitor-general,* contra.

RUSSELL, C. J.  (After stating the foregoing facts.)

■ As to the merits of the three general grounds of the motion for new trial, the record shows that the defendant confessed that at the instigation of Mrs. Powers, who stands charged with being an accessory before the fact of the murder, he shot and killed the deceased named in the indictment, to obtain a promised reward of $1000. The written confession was introduced in evidence without objection, and more than one witness was introduced to corroborate it. The corpus delicti and the venue were proved. It is not argued by learned counsel that the evidence is insufficient to authorize the verdict. It is admitted, for all the purposes of the case, that the only question before the court below and this court is whether the accused would have been accorded a sentence of life imprisonment except for certain errors alleged to have been committed by the court.

■ In the first special ground of the motion for new trial it is contended that it was unnecessary for the State to offer any evidence of a guilt that was admitted, and *ergo* that it was error for the court to submit to the jury in his charge the law of malice, deliberation, the definition of murder, etc. It is insisted that to do so put the defendant in a false light and in the position of making a denial of guilt before the jury, and that this tended to weaken his appeal for mercy; that the court should simply have charged the jury that the defendant admitted his guilt and asked for mercy, and that the only question for them was whether he should have a sentence of life imprisonment. It is not made to appear how the accused was prejudiced, or why the court should have so limited the instruction. Upon arraignment, counsel for the defendant told the court that the State had refused to agree that he have a sentence of life imprisonment in consideration of a plea of guilty, and the defendant would not plead but stand mute and later make a confession and ask for mercy. This statement of counsel really presented nothing which made it necessary that the court conduct the trial otherwise than as appears. Had the

solicitor-general agreed to accept the proposition, there could not have been any plea other than guilty, though upon such agreement of the solicitor-general and upon approval by the court a jury might have been directed to find a verdict of guilty, with a recommendation of imprisonment for life; but the Code, in fixing the penalty for capital offenses, provides for life imprisonment, when the jury so recommends, in various felony cases. It is very evident that there can be no such thing as a plea of guilty with a recommendation that the prisoner be punished by life imprisonment, though a judge may sentence a prisoner to life imprisonment where the conviction is based solely upon circumstantial evidence, although the jury do not recommend life imprisonment; but where there is direct evidence, the judge has no power to alter the sentence of the jury. Nor has he in case of a plea of guilty in a capital case, unless it may be said he could take cognizance of the evidence being circumstantial. Counsel for the defendant stated that the defendant stood mute, which made it the duty of the solicitor-general or the clerk to enter a plea of not guilty. Penal Code (1910), § 972. Counsel further stated that at the proper time the defendant would make his confession, which could not be otherwise than by the statutory statement of the accused. This plea of not guilty made necessary a full compliance with the principles and rules of law governing criminal trials, since no consent verdict was agreed to, before a verdict of guilty would have been authorized; and it would have been extremely unfair to the State, as well as to the accused, not to have given an instruction that the jury had the right to pass upon the entire case as laid before it, and make the verdict it saw fit. Furthermore, we think the instruction here complained of was essential to enable the jury to intelligently determine whether they would recommend mercy, although they had the unlimited right to recommend without any reason whatever of law or fact, except their own wish. For these reasons the first ground is without merit.

■ The court did not err in charging the jury that they could do whatever they thought was right under the law after considering the case, since this was immediately followed by the words, "you do what you think right in the matter of fixing the punishment in the event of a verdict of guilty," such words naturally explaining that the jury were not bound by any law in fixing the punish-

ment, so far as granting mercy was concerned. In telling the jury to do what they thought was right, the court was really telling them to do whatever they wished to do. To say to another, in regard to a matter under consideration, "you do whatever you think is right," is equivalent to saying, "you do as you please." To make it all the clearer to the jury, the court said, in concluding this instruction: "I can not tell or state to you what you ought to do."

■ The request that the court charge the jury that they were not required to believe there were extenuating circumstances, as set out in the third ground, was sufficiently covered, since the court told the jury they could do whatever they thought was right, and could not have told them they must do otherwise, and none other than a judge can tell a jury what they shall do during the progress of a trial, for they must receive the law from him. The request is subject to the criticism that it is argumentative. A trial court can never properly enter the province of counsel for either party, and this request would have been unfair to the State. Especially would it be improper for him to call the attention of the jury to reasons for one finding rather than another. But it is insisted that the request was particularly appropriate to this case. We recognize the general principle that it is far more enlightening to a jury to present a legal principle in a concrete form adapted to the particular case than to read a Code section or otherwise state an abstract principle of law; and this has frequently been said by members of this court, especially in our earlier decisions. The effect of this request would have been an argument that the defendant should have a recommendation upon the ground of sympathy, though we find nothing in the record except circumstances of youth and waywardness, with the picture of disgrace naturally to be brought upon relatives of the accused, which calls for sympathy; although, as above stated, the charge of the court left the way open for a recommendation on the ground of sympathy, as the jury was not at all restricted. Hence we do not think the request "particularly appropriate" to the circumstances of the case. The same reasoning applies to the request set out in ground 4, wherein it was desired the court tell the jury that a recommendation was solely a matter of mercy. We do not think the jury could have received any other impression from the instructions actually given.

■ Even if the court erred in admitting evidence as to deceased's

early life, as set forth in the fifth and sixth grounds, it would not be cause for the grant of a new trial. It does not appear to have been prejudicial. We do not believe the facts showing deceased to have been left an orphan, and having lived in an orphans' home, could have persuaded an intelligent jury to deny mercy to the defendant, if otherwise disposed to grant it.

■ It was contended in the seventh ground that the testimony of Crumpton that defendant had sought to engage him to "stick up" a place tended to put the character of defendant in issue, and tended to show commission by him of other crimes, and was both illegal and prejudicial. We think the evidence was clearly admissible under the rulings in the cases of *Frank* v. *State,* 141 *Ga.* 243 (80 S. E. 1016), and *Williams* v. *State,* 152 *Ga.* 498 (110 S. E. 286). This witness testified, in response to a question by the court, that he had the conversation with defendant referred to, before defendant answered the advertisement of Mrs. Powers; and from other evidence it appears this was two weeks before the homicide, although according to the defendant's statement he had known deceased only about nine days. The eighth ground alleges that this was particularly prejudicial, because the solicitor-general had told the jury at the outset of the trial that the defendant had come to Macon ripe for crime. It does not appear that the statement was objected to, and we think the evidence was admissible and relevant to the entire issue before the jury. We fail to see how the statement of the court, in ruling upon the matter, that it appeared that the evidence might show the condition of defendant's mind, can be tortured into an expression of opinion upon anything proved. Hence we hold both objections to be without merit.

■ We can not say that the court abused his discretion in refusing to award a mistrial in either of the instances of which complaint is made in the ninth and tenth grounds. The matter of ordering a mistrial for improper argument of counsel is very important, and should be liberally exercised in all cases where counsel abuse their privilege of argument by prejudicing the case of the opposite party. See *Knowles* v. *Dayries Rice Co.,* 10 *Ga. App.* 567 (73 S. E. 856); *Pelham &c. R. Co.* v. *Elliott,* 11 *Ga. App.* 621 (75 S. E. 1062). However, it is a matter largely within the discretion of the court; and unless it is apparent that a mistrial was essential to preservation of the right of fair trial, the discretion

will not be interfered with. It appears, furthermore, that certain of these remarks of the solicitor-general were provoked by a remark of counsel for defendant. It is true that two wrongs do not make a right, and it was the duty of the solicitor-general to object to any improper remark of counsel for the defendant, rather than make one himself in reply. However, since these remarks were calculated to be considered no more than mere sparring or legal pyrotechnics and unlikely to affect the decision of the jury, we can not say they demanded a mistrial, in view of the cautioning words the court used in regard to them. The court stopped the solicitor-general from pursuing this line of argument, and instructed the jury not to consider argument of the sort; so we can not say that "poison had been planted in the minds of the jury," and that the jury could not, after these remarks, have passed upon the case without prejudice, either as to guilt or as to a recommendation. Nor can we agree that if ever in the history of this State a mistrial was demanded it was in this case. The statement by the solicitor-general that the clemency department of the State government was composed of politicians is subject to various interpretations, and the officer then admitted that he was a politician, which naturally removed that beyond question; but it can not properly be said that the presumably fair-minded jury could have been led to deny mercy or find guilt upon these statements of counsel. With respect to the statement concerning conviction of Mrs. Powers, the court told the jury to disregard all statements whatever on that score, which should have cured any undue influence if there was any. The prosecuting officer continued by referring to any future conviction, and again a mistrial was asked and denied without a rebuke to the prosecuting officer, as is sometimes administered. Asking the jury to find the defendant guilty without a recommendation, if the jury wished to help convict any other person charged with murder, was tantamount to an appeal for help in enforcing the law, and was one way of saying that in the opinion of the solicitor-general this case was as strong against the defendant as any case could be; and it may well be said that such statements as these are so common in criminal trials that they are regarded very lightly by juries.

Examination of grounds eleven, twelve, and thirteen, relating to newly discovered evidence, will reveal that the court properly overruled each and all of them, since the evidence sought to be

134

established is in character clearly impeaching, or else impeaching and cumulative, and upon that ground they are insufficient basis for the grant of a new trial.

After a very painstaking examination of the record and careful consideration of argument of counsel, we are satisfied that the court did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur.*