### 21908.   JOHNSTON v. FIRST NATIONAL BANK OF BRUNSWICK.

Submitted January 15, 1963—Decided
April 4, 1963.

*Barrie L. Jones,* for plaintiff in error.

*Conyers, Fendig, Dickey & Harris,* contra.

QUILLIAN, Justice. ■ Our rules of practice provide that the bill of exceptions shall specify plainly the decision complained of and the alleged error, *Code Ann.* § 6-901 (Ga. L. 1880-1, p. 123; Ga. L. 1887, p. 41; Ga. L. 1957, pp. 224, 232), and that the Supreme Court shall not decide any question unless it is made by a specific assignment of error in the bill of exceptions. *Code* § 6-1607. However, under *Code* § 6-1307 the Supreme Court shall not dismiss any case for any want of technical conformity to statutes or rules of practice "where there is enough in the bill of exceptions or transcript of the record presented, or both together, to enable the court to ascertain substantially the real questions in the case which the parties seek to have decided."

"An assignment of error that the verdict is contrary to law and the principles of justice and equity is too general and indefinite to present to a reviewing court any question of law except that the verdict, for want of any evidence to support it, is contrary to law." *Jackson v. Sapp,* 210 Ga. 134 (1) ( 78 SE2d 23), citing *Pace v. Pace,* 154 Ga. 712 (115 SE 65), and *Calhoun v. Ozburn,* 186 Ga. 569, 570 (198 SE 706).

*Code Ann.* § 6-806 (Ga. L. 1889, p. 114; Ga. L. 1946, pp. 726, 732) provides that the plaintiff in error shall plainly and specifically set forth the errors alleged to have been committed, and shall incorporate in the bill of exceptions a brief of such of the written and oral evidence as is material to a clear understanding of the errors complained of. Where the trial judge certifies that the bill of exceptions is true and "contains" all

the evidence and in fact the bill of exceptions really "contains" no evidence whatever, but only a specification of a duly approved brief of evidence (in that sense only was the material evidence "contained" in the bill of exceptions), "it is evident . . . that the word 'contains' in the certificate was simply used (probably by mere inadvertence) in the place of the more accurate word 'specifies' . . . This court will not dismiss the writ of error for a mere verbal inaccuracy therein." *Flanagan v. Scott,* 102 Ga. 399, 402 (3) (31 SE 23). It would thus appear that the converse is true, as in this case, where the certificate uses the word "specifies" when some of the evidence is actually "contained" in the bill of exceptions.

· There is no prescribed form for an assignment of error. The criterion of its sufficiency is that it specifically designates the error complained of and points out wherein the error lies. *Crossley v. Leslie,* 130 Ga. 782, 785 (61 SE 851, 14 AC 703); *Patterson v. Beck,* 133 Ga. 701 (66 SE 911).

However, the plaintiff in error in his supplemental brief filed in this court expressly abandoned all assignments of error dependent upon consideration of the evidence. It is there stated: "First, it should be pointed out that the assignments of error do not direct themselves to questions of evidence but are assignments of error which in effect say that the lower court could not pass an order containing the various provisions complained of in the bill of exceptions regardless of the evidence."

Under the rule of practice as held in *Tift v. McCaskill,* 171 Ga. 289 (3) (155 SE 192), where the brief of the attorneys for the plaintiff in error confines the issues involved to specified points, all other questions made by the assignments of error in the bill of exceptions will be treated as abandoned. Similar pronouncements are found in *Cumby v. New Albany Box &c. Co.,* 58 Ga. App. 843 (200 SE 307); *Lander Motors, Inc. v. Lee Tire &c. Co.,* 89 Ga. App. 194, 200 (78 SE2d 839), and in other opinions of this court. *Manchester v. State,* 171 Ga. 121 (1) (155 SE 11); *Roseman v. Wright,* 209 Ga. 748 (1) (76 SE2d 7); *Wright v. State,* 217 Ga. 453, 454 (1) (122 SE2d 737). So, this court is not privileged to pass upon the sufficiency of the evidence to support the parts of the decree to which exception is taken.

This leaves for consideration the remaining assignments of error enumerated in the preceding statement of fact.

■ The exception that the decree is invalid because it awarded to the trustee compensation that, according to its own recitals, was not earned and for which no liability of the trust estate had accrued when the decree was entered is well taken.

The error is apparent because neither at law nor in equity is one, in the absence of a contractual obligation of the parties, entitled to recover of another the value of anticipated services that have not been rendered, simply because it is reasonable or probable that they will be performed in the future.

■ The presumption is that the evidence supported the decree in so far as it awarded compensation to the trustee for services previously performed. But there was no specific award of compensation for past services alone. On the contrary, the decree awarded the compensation for services of the nature indicated and compensation for services to be rendered in the future in one gross or aggregate amount, so that it is impossible to ascertain from an examination of the decree how much of that gross amount is allowed the trustee for its services that had been performed and those that the chancellor anticipated would be rendered. The invalidity of the award to the trustee for services to which it was not entitled infected the whole decree, in so far as it related to the amount allowed the trustee as extra compensation. Consequently, it must be held that the assignment of error challenging its validity on this ground is meritorious.

■ We consider the assignment of error that the trial judge erred in permitting the trustee to borrow money for the purpose of paying the debts of the trust estate and decreeing that such loan became a lien against the Cumberland Island property. The plaintiff in error contends that part of the judgment was error because the trial judge was without legal authority to permit the trustee to borrow money or to encroach on the property of the trust estate. He cites as authority for this position *Field v. Manly*, 185 Ga. 464 (2) (195 SE 406), in which a pronouncement applicable to administrators and executors is found: "An administrator, by virtue of his appointment as such, has no legal

right to borrow money and bind the estate by a note and mortgage given therefor, although the money was borrowed for the benefit of the estate. Nor will the fact that the proceeds of the loan were used for the benefit of the estate to pay debts operate to give the lender an equitable lien on the mortgaged property or other assets of the estate . . . The rule is the same as that which obtains in the case of an executor, unless the making of such an obligation is authorized by the will . . . Nor will the fact that an administrator . . . obtained from the superior court an order authorizing such a transaction render it valid."

. But the rule stated in the *Field* case has no application in the administration of a trust by a trustee acting under appointment of a court of competent jurisdiction. A well established principle of the law of trusts is that the court may, in the exercise of sound discretion, permit such trustee to borrow money and, if need be, decree such debt to be a lien against the property of the trust estate. Authority for the conclusion is *Weems v. Coker*, 70 Ga. 746 (2): "A chancellor may grant power to a trustee at chambers to mortgage the trust estate, on a proper proceeding for that purpose. The power to allow a sale includes the power to allow a mortgage." See *Jackson v. Massachusetts Mut. Life Ins. Co.*, 183 Ga. 659 (2) (189 SE 243).

This broad authority of the chancellor should be prudently exercised and permission for the trustee to place a lien on the corpus of the trust property should not be granted except where the exigencies of the trust's administration render it necessary. The pleadings and evidence, sufficient to authorize the trustee to place a lien upon the corpus of the estate for the purpose of paying debts, must show the validity and approximate amount of the debts and the income of the trust estate that is, or will become, available to retire the debts.

These principles should be strictly observed where, as in the present case, the will of the settlor which created the trust estate provides the expenses of the trust be paid from its income, provides a large and apparently adequate annuity for that purpose, and in express terms forbids encroachment upon the corpus of the trust property. The pertinent provision of the will reads:

"I direct my office building and real estate upon which the same is located on Fifth Avenue, Pittsburgh, Pennsylvania . . . known as the 'Carnegie Building' to be held and kept rented by my said Executors in their capacity as Trustees upon the following uses and trusts: To use so much of the yearly income as received as may be necessary for the purposes and expenses of the trust herein created as to my real estate located on Cumberland Island, Georgia, as long as the trust to said Island property continues; and to pay the surplus of said income, if any, yearly during the life of the trust as to said Island property to my said children then living, and to the children of such of my named children as are then dead, the children of every deceased child taking their parent's share."

The bill for direction brought by the trustee in the present case in general terms alleged there would be certain expenses necessarily incident to the further conservation of the trust property and in carrying out the purposes of the trust until it could be terminated; that named competent counsel had been retained in the condemnation proceedings instituted by the government against a valuable part of the trust estate land in suits brought by the trustee for damage done the trust property; that the attorneys should be allowed fair fees for their services and further that the trustee was entitled to extra compensation for services beyond those normally required in administering the trust estate.

Included in the demands against the trust estate, enumerated in the petition and that the trustee proposed to satisfy with money derived from the loan, were items of indebtedness that had not accrued, and there was no averment as to when they would become due and payable. Some of these demands were expenses of preserving the trust property and carrying out the trust, the fees that were to be paid the attorneys and a part of the trustee's claim for extra compensation.

The petition showed further that periodically large sums of money derived from the rents of the Carnegie Building were paid the trustee, but did not disclose when the next such payment would become due. There were averments indicating the government had condemned very valuable real property of the trust estate for which a large amount would be paid the estate as

compensation, from which the fees to which the attorneys were entitled would be paid. The time when the compensation would be realized, through recovery or settlement, was not indicated.

The bill for direction did not set out the several amounts necessary to meet these obligations nor did it allege the aggregate amount that would be required for the purpose, except that it was alleged that the attorneys representing the trustee in the condemnation proceedings and suit for damages would be entitled to fees in a certain amount. However, from the averments of the petition it appeared that most of the fees to be paid the lawyers were contingent upon the amount recovered and would be paid from the recoveries or settlement made in the cases. It appeared from an exhibit in the form of a financial statement attached to the petition that the trust estate had on hand "quick liquid assets," that is money or its equivalent, $70,060.51 available for the payment of its obligations.

From the facts stated, it is apparent that the petition failed to furnish sufficient information or data, from which it could be determined whether the trustee should be granted authority to borrow money and secure the loan by a lien against the corpus of the trust property. This conclusion is bolstered by the fact that the decree did not designate the amount of money the trustee was permitted to borrow, or that the chancellor had reached the definite conclusion that it would be necessary for the trustee to obtain a loan to meet the obligations of the trust.

In the case of *Bolles v. Munnerlyn*, 83 Ga. 727, 733 (10 SE 365), is the obiter observation: "When a chancellor is applied to by a trustee for authority to incumber the trust property, he should set out in his order all the powers, terms and stipulations which the contract should contain." The opinion of *Wagnon v. Pease*, 104 Ga. 417, 425 (30 SE 895), refers to this expression approvingly.

Whether the rule suggested in the *Bolles* case is sound and should be adopted need not be now decided. It is, however, safe to conclude that neither the law nor the principles of equity contemplate that unbridled power be conferred upon the trustee to borrow any amount of money he may deem expedient, and bind the trust he represents for the payment of the loan. Such

authority granted to the trustee would have the effect of substituting his discretion for that of the court having jurisdiction of the trust. The grant of such power in the instant case was error.

*Judgment reversed. All the Justices concur.*