## HENDERSON et al. v. LOTT.

1. Where a person is a party plaintiff to a cause in his individual capacity and as administrator, and is represented in both capacities by the same attorneys, who acknowledge due and legal service of the bill of exceptions and waive all other and further service, and sign such acknowledgment as attorneys "for Y. C. Lott," he being the plaintiff in such dual capacities, such acknowledgment of service, when properly construed, is an acknowledgment of service for their client in both capacities, and the bill of exceptions will not be dismissed for want of service on the client in his representative capacity, his counsel not distinctly and specifically reserving such objection in their acknowledgment of service.

(a) The bill of exceptions can be amended in this court by making the administrator a party defendant in error, he being bound by such acknowledgment of service, and on motion for that purpose he is so made a party.

2. Assignments of error not insisted upon by counsel in their briefs or otherwise will be treated by this court as abandoned. A mere recital in briefs of the existence of an assignment of error, without argument or citation of authorities in its support, and without a statement that it is insisted upon by counsel, is insufficient to save it from being treated as abandoned.

3. Under a conveyance of land, subject to an outstanding incumbrance, by deed of warranty, in which is a recital that it is understood that such incumbrance is on the property, and that the grantee is to pay it off and hold the grantor harmless, and the contemporaneous execution by the grantor to the grantee of her note for the amount of the incumbrance, her note being secured by the notes of third persons, themselves secured by deeds to land, in an aggregate sum greater than the grantor's note, in which latter note is a stipulation that it is agreed that it is to become void and that the collateral notes are to be returned to the grantor upon the payment of such incumbrance, the grantor had the right to pay off such incumbrance and have her note to her grantee and the collateral notes securing the same returned to her; and where the grantee returned to the grantor the interest coupons attached to such collateral notes for the purpose of enabling her to keep the interest

Appeal and Error, 4 C. J. p. 316, n. 22; p. 567, n. 75; p. 1069, n. 23.
Equity, 21 C. J. p. 200, n. 11.
Pledges, 31 Cyc. p. 837, n. 47.
Trial, 38 Cyc. p. 1568, n. 98.

paid on the incumbrance upon the property, and thus prevent accelera-
tion of the maturity of the principal of the loan, it became her duty
to keep such interest paid; and where she became mentally incapable
of transacting business and her son was appointed her guardian, and
where he became possessed of the interest coupons to the collateral
notes to his mother's note, it became his duty to keep the interest on
the incumbrance paid up; and when he paid off the loan on the land
and had the note evidencing the loan, and the deed securing this note,
transferred to another for his benefit, and where the transferee declared
the principal of the loan due on account of default in the payment of
an installment of interest, and under a power of sale in the loan deed
advertised and sold the land to another, this being done for the son,
who was such guardian, and where the purchaser paid no money of his
own for the land, but bid it in and took a deed thereto for the benefit
of the son, to whom he conveyed the land, equity will declare the title
of the son to be held by him in trust for the grantee of his mother,
especially where the son had collected in full the collateral notes pledged
by his mother to secure her note given to her grantee to make him
whole if he had to pay off the incumbrance on this land.

4. The procuring by the grantee in the above-mentioned deed of a loan
secured by his deed to this land and by transferring to the lender the
note of the grantor to him and the collateral notes pledged to secure
said note, it being stipulated between the borrower and the lender that
the latter was to hold the principal and collateral notes for the same
uses and purposes and upon the same conditions as they were held by
the grantee, did not amount to a fraud against the grantor, and in no
way estopped the grantee from asserting his title from the grantor
to this property.

5. A verdict for the plaintiff not being demanded, the trial judge erred in
directing a verdict in his favor.

No. 5426.  December 15, 1926.

Ejectment.   Before Judge Eve.   Irwin superior court.   March
20, 1926.

*Eldridge Cutts, W. R. Mixon,* and *Philip Newbern,* for plaintiffs
in error.

*Rogers & Rogers* and *Milner & Farkas,* contra.

Hines, J.   1.   A motion is made to dismiss the bill of exceptions
in this case, on the ground that Y. C. Lott, as administrator of
Lucinda Lott, has not been made a party defendant to the bill
of exceptions, and has not been served with a copy thereof or
acknowledged service thereon.   Lott was a party plaintiff in the
case in the court below, in his individual and representative ca-
pacity.   He was represented in both capacities by the same at-
torneys.   These attorneys in due time acknowledged due and legal
service of the bill of exceptions, waived "all other and further
service," and signed the acknowledgment as "Atys. for Y. C.

Lott." Properly construed, this was an acknowledgment of service for Lott in both of the capacities in which he was a party to the suit, counsel in their acknowledgment of service not distinctly and specifically stating that it was made for him in his individual capacity alone. Acts 1911, p. 149; 5 Park's Code, § 6164(a). Where such acknowledgment of service has been procured, the bill of exceptions can be amended in this court by making any person a party defendant in error to the case who is bound by such service, although such person may not have been named in the bill of exceptions. Acts 1911, pp. 149, 156; 5 Park's Code, § 6164(b). Plaintiff in error having filed a motion in this court to make Lott, in his representative capacity, a party defendant, the prayer of such petition is granted, and he is hereby made a party defendant in the bill of exceptions; and the motion to dismiss the bill of exceptions is denied.

2. The defendants demurred to the pleadings and entire case of the plaintiff, upon various grounds. The demurrer was overruled, and to this judgment they filed exceptions pendente lite. They assign error upon these exceptions in the bill of exceptions in this case. The only reference made by counsel for plaintiffs in error to this matter is a recital in their brief that the plaintiff offered three amendments, which were allowed by the court over the objections of the defendants, and that to the allowance thereof defendants excepted pendente lite, "for the overruling of their demurrer," which fully appears of record. There is no insistence upon this assignment in the brief of counsel, and the same has not been otherwise considered and urged by them. They make no argument and cite no authorities in support of this assignment of error, and in no other way insist that this court pass upon the same. This assignment of error, not being insisted upon by counsel for the plaintiff in error, will be treated as abandoned. *Steele* v. *Graves,* 160 *Ga.* 120 (3-*e*) (127 S. E. 465) ; *Donald* v. *Groves,* 160 *Ga.* 163 (2) (126 S. E. 583) ; *Mangham* v. *Cobb,* 160 *Ga.* 182 (10) (127 S. E. 408).

3. On November 15, 1921, Lucinda Lott, for the alleged consideration of $7,000, sold and conveyed by warranty deed the premises in dispute to William Henderson. This deed contained this provision: "It is understood that a loan for the sum of $2,-000 is outstanding against the property herein described, to the

Georgia Loan & Trust Company, and, while this deed can only convey the equity of the grantee [grantor?] in said property, that the said grantee is to pay off said loan, and hold the grantor herein harmless to the principal and interest on said loan." Contemporaneously with the execution of this deed, Mrs. Lott executed and delivered to Henderson her note for the sum of $2,160, dated November 15, 1921, due August 1, 1922, and to secure the payment of her note she pledged to Henderson a note of Maggie Hair for the principal sum of $1,500, with five coupon interest notes of $60 each attached thereto, said principal note falling due September 1, 1923, and being secured by a mortgage or deed to certain described real estate; and also a note of Mr. and Mrs. M. E. Flanders, for $1,500, with five coupon interest notes attached, for $52.50 each, said principal note falling due January 27, 1924, and being secured by a deed to certain described property. Said pledges were contained in said note from Lucinda Lott to William Henderson; and in her note she constituted Henderson, or the holder of her note, her attorney to collect, sell, or otherwise dispose of said collateral notes, either at public or private sale, and without any notice to her, for the purpose of paying her note. On the back of her note there was this stipulation: "It is understood and agreed that this note shall be void and of no effect, and that the collateral notes herein described shall be returned to Lucinda Lott, upon payment in full of . . the principal sum due the said Georgia Loan & Trust Company on a loan to the said Lucinda Lott is [of ?] $2,000, with interest payable semi-annually, the said loan being secured by a loan deed from said Lucinda Lott covering the" premises in dispute, "this day sold by the said Lucinda Lott to William Henderson." This stipulation was dated November 15, 1921, and was signed by William Henderson. In the deed from Lucinda Lott to the Georgia Loan & Trust Company, referred to above, there was a provision accelerating the maturity of the principal of the loan which said deed was given to secure, if there was default in the payment of any installment of interest by the grantor. This deed also contained a power of sale, which authorized the grantee to sell the premises in dispute upon default of the grantor in the payment of any installment of interest, or of the principal debt, after advertising the same in the manner pointed out in said power. This deed was dated July 1, 1916, and

the loan thereby secured matured on August 1, 1921. On July 18, 1921, the payment of this loan was extended from August 1, 1921, to August 1, 1926.

On December 19, 1921, William Henderson turned over to the plaintiff the interest-coupon notes attached to the Hair and Flanders notes above referred to, for the purpose of enabling Lucinda Lott to meet the installments of interest on the loan of the Georgia Loan & Trust Company as they fell due; and the plaintiff gave to Henderson his receipt for said interest coupons. In this receipt it was recited that the Hair and Flanders notes were held by Henderson as collateral security for a loan of $2,000, made against the Lott "old home place," . . by the Georgia Loan & Investment [Trust?] Company to Mrs. Lucinda Lott, and that said notes were to be returned when Lucinda Lott or the plaintiff cancelled the loan of said company. On January 19, 1923, plaintiff applied for guardianship of his mother, on the ground that she was mentally incapable of managing her preperty, and was appointed such guardian and duly qualified as such. He purposely permitted the interest on the loan due by her to the Georgia Loan & Trust Company to become in default. On February 21, 1923, he paid to said company the principal and interest due on its loan. He had said company to transfer to S. K. Simon the notes representing the principal and interest due on said loan, and the deed securing the payment thereof. He then had Simon to advertise the property for sale on the first Tuesday in April, 1923, under the power of sale embraced in the deed from Lucinda Lott to the loan company. On said day the property was sold by Simon, and was bid in by the Gordy Realty Company. This company was acting for and in behalf of the plaintiff. Simon executed to Gordy Realty Company a deed to the property, in the name of Lucinda Lott, by him as her attorney in fact. Thereupon the Gordy Realty Company conveyed the property to plaintiff. In these circumstances, the plaintiff claims that he has the legal title to the premises in dispute, and is entitled to recover them with mesne profits from William Henderson. Is this contention sound? In the circumstances above narrated, under which Henderson purchased from Mrs. Lott the premises in dispute, it was incumbent upon Mrs. Lott to keep the interest on her loan from the Georgia Loan & Trust Company paid up, and to dis-

charge the principal of the debt when it became due, or in default thereof, to have paid to Henderson the amount of her note, $2,160, to reimburse Henderson for all moneys which he had to pay for this purpose. She did not have the right to purposely let the interest become in default, thus accelerating the maturity of the principal of the loan, and permitting the property to be sold in order that she might buy in the property and defeat the title which she had made to her vendee. When the plaintiff obtained from Henderson the interest coupons attached to the notes which his mother had pledged to Henderson to hold him harmless if he had to pay off his loan, it became his duty to pay the interest that fell due on the loan, and these interest coupons were seemingly sufficient to meet these interest installments as they fell due. After plaintiff became guardian of his mother, it was likewise his duty, as her representative, to keep the interest on this loan paid up and to maintain the loan in good standing, if he had sufficient funds of hers with which to accomplish this purpose. In view of this situation, he could not purposely permit the interest on this loan to become in default, and thus accelerate the maturity of the principal of the loan, thus permitting the property to be sold under the power of sale in the deed from his mother to the loan company, in order that he might acquire the title to the property, and thus defeat the title which his mother had made to Henderson. When he paid up the amount of principal and interest due to the loan company on its loan, had the papers evidencing and securing this loan transferred to another for his benefit, had the property sold under the power in the security deed from his mother to the loan company, procured the property to be conveyed to another for his benefit, and then acquired title thereto from such purchaser, he will be treated in equity as having paid off the loan and as holding title to this property for the benefit of the purchaser from his mother. "Equity considers that done which ought to be done, and directs its relief accordingly." Civil Code (1910), § 4523. This is the favorite maxim of equity. 21 C. J. 200, § 190.

But it is contended that the plaintiff was the sole heir at law of his mother, and as such heir at law had such an interest in this property as would entitle him to buy this property when it was sold as his mother's property under the power of sale contained in the security deed from his mother to the loan company.

In support of this contention, counsel for the plaintiff rely upon decisions of this court which hold that "An administrator, who is an heir at law of his intestate, and as such has an interest in the property sold, may purchase at the sale of the property of the estate, provided he is guilty of no fraud, and the property is exposed for sale in the ordinary mode and under circumstances to command the best price." *Arnold* v. *Arnold,* 154 *Ga.* 195 (113 S. E. 798) ; *Thompson* v. *Thompson,* 157 *Ga.* 377 (121 S. E. 225) ; *Robinson* v. *Smith,* 159 *Ga.* 269 (5) (125 S. E. 593). The facts of this case do not bring it within the ruling announced in the cases just cited, for two reasons : First, at the time of this sale, the plaintiff was not an heir at law of his mother, who was then in life. No one can be an heir of the living. At most, the plaintiff was merely the prospective heir of his mother, and as such had no such interest in this property as would authorize him to bid thereon and purchase at a sale had for his benefit. In the second place, the plaintiff was guardian for his mother, and as such was chargeable with the duty of carrying out her agreement to pay off and discharge this loan. In fact he occupied a fiduciary relation both as to his mother and the purchaser from his mother, as we have shown above. He could not buy at such a sale when the effect of it would be to violate the obligation of his mother to her vendee, or violate the trust imposed on him as guardian of his mother in this matter, or the trust arising from the agreement by which he got possession of the Hair and Flanders interest notes. So, we are of the opinion that the plaintiff, when he paid off the loan on the premises in dispute to the Georgia Loan & Trust Company, will be treated in equity as having done so for the benefit of William Henderson, or his assigns, and will be decreed to hold the title to this property so acquired at the sale under the power of sale, embraced in the deed from his mother to the loan company, for the use and benefit of the purchaser from his mother. It follows that the plaintiff showed no such title as would in equity entitle him to recover the premises in dispute; and that the court erred in directing a verdict for the plaintiff for the premises in dispute and mesne profits, upon the theory alone that he acquired title to these premises under the sale above referred to.

4.  On February 24, 1924, William Henderson procured from H. G. Paulk, guardian, a loan of $1,074.50, and to secure the pay-

ment of the same gave to Paulk a deed embracing the premises in dispute. As additional security for the payment of said loan, Henderson transferred to Paulk, guardian, the note given him by Lucinda Lott on November 15, 1921, for the sum of $2,160, together with the Hair and Flanders notes pledged to secure the same. In the transfer of the note of Lucinda Lott, together with said collateral notes, by Henderson to Paulk, guardian, it was declared that these notes were to be held by Paulk "for the same uses and purposes and on the same conditions" as they had previously been held by Henderson. It is contended by the plaintiff that this transfer by Henderson to Paulk, guardian, amounted to a conversion of these papers by Henderson, and constituted a breach of the trust reposed in him by the maker of the principal note. With this contention we do not agree. We do not think that this transaction was a conversion of this paper, or that it amounted to a breach of trust on the part of the transferor. Henderson secured the loan from Paulk by a deed to the premises in dispute. This he had a perfect right to do. The premises had been previously encumbered, and the encumbrance still existed. He held this principal note and these collateral notes as a pledge of security for the removal of this encumbrance; and his transfer of this paper to Paulk, guardian, was for this purpose alone. Paulk, guardian, held this paper just as Henderson held it. So we do not think that the defendants should be precluded from asserting their title to these premises on the ground that William Henderson had not come into court with clean hands.

5. This was an action of ejectment brought by John Doe, on the demise of Young C. Lott, against Richard Roe, casual ejector, and William Henderson, tenant in possession, to recover the premises in dispute. In aid of his action the plaintiff filed a supplemental petition in which he set up the facts under which he claimed title to the premises in dispute. On February 9, 1925, Lott amended his petition, and alleged that his mother died April 29, 1924; that he was her son and only heir at law; that she was, at the time she sold and conveyed these premises to William Henderson, and at all times thereafter, not of sound mind, and was incapable of contracting at the time she made said deed; that William and John G. Henderson knew of her unsound mind, in consequence of which her said deed to William Henderson, and

the deed from the latter to John Henderson, were void; that William Henderson, at the time he conveyed the premises to John Henderson, was insolvent, and that the deed from William to John Henderson was without consideration and void. On February 9, 1925, the plaintiff, as administrator of Lucinda Lott, intervened in said case, and alleged that the premises in dispute were owned by his intestate mother; that the same was claimed to have been purchased by William Henderson from her, he paying, as the consideration for said property, two notes of Millie Barrineau, aggregating $7,000, which notes were absolutely worthless at the time of the alleged trade, which fact was known to Henderson; that Henderson, knowing that said notes were worthless and that Lucinda Lott was old, feeble, and weak-minded, did perpetrate a fraud upon her by trading said worthless notes to her for said premises, by which said fraudulent transaction he secured from her, in addition to the house and lot in question, her note for $2,160, which was secured by collateral notes aggregating the sum of $3,000; that by reason of the disparity in the value of the considerations exchanged by said parties, and the condition of Lucinda Lott, said transaction was fraudulent; that the deed from William Henderson to John Henderson was without valuable consideration, and was made for the purpose of carrying out his fraudulent scheme to make it appear that John Henderson was a purchaser for value of these premises; that by reason of the above facts said sale to William Henderson by Lucinda Lott was void, and no title passed either to William or John G. Henderson; that intervenor tenders into court to William and John G. Henderson the two notes of Millie Barrineau, given by William Henderson to Lucinda Lott for these premises, with the collateral attached to these notes. He prays that the deed from Lucinda Lott to William Henderson, and her note to him, be declared void, and that the same be cancelled. On the trial of the case before the jury there was no evidence tending to show that Lucinda Lott was a person of unsound mind and incapable of contracting, and there was no evidence demanding a finding that Henderson had perpetrated a fraud upon Lucinda Lott in the purchase from her of the premises in dispute. Taking the view most favorable to the plaintiff, the question whether or not there was any fraud in the transaction was one for the jury. If the evidence would have au-

thorized a finding that this deed was void because fraudulently obtained, the evidence certainly did not demand a finding that it was void because it was fraudulently obtained; and the direction of a verdict on this contention was erroneous.

Counsel for the plaintiff administrator further contend that he was authorized to rescind the trade between his mother and William Henderson, on the ground of fraud practiced upon her by Henderson in procuring her deed to the premises in dispute. This deed was executed on November 15, 1921. The intervention of the administrator for the purpose of rescinding the trade and cancelling the deed and note from his mother to Henderson was not filed until February 9, 1925, more than three years after the deed was executed. It was not stated when the alleged fraud was discovered by Lucinda Lott or her administrator. A contract may be rescinded for fraud; but in order to entitle a party to rescission he must promptly, upon the discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract, if it be of any value. Civil Code (1910), § 4305. The party who is charged with the fraud should be given an opportunity to redress the wrong before being subjected to a suit for rescission. He might be willing, without suit, to give back to the complaining party what he received under the contract, and to take back from such party what the latter received from him thereunder. This would end the controversy and save litigation. One who seeks rescission of a contract on the ground of fraud must restore, or offer to restore, the consideration received thereunder, as a condition precedent to bringing the action for that purpose. *Williams* v. *Fouché;* 157 *Ga.* 227 (121 S. E. 217). While it is true that fraud vitiates a contract, such contract is nevertheless not void, but voidable only, at the instance of the person defrauded. The party must proceed with the offer to restore what he has received with such promptitude as the nature of the case would require, upon the discovery of the fraud. *Jordy* v. *Dunlevie,* 139 *Ga.* 325 (77 S. E. 162). Applying these principles, the evidence did not authorize, as a matter of law, the direction of a verdict in favor of the plaintiff upon the theory of rescission. It follows that the court erred in so directing.

*Judgment reversed. All the Justices concur.*