1. Special ground one of the amended motion for new trial seeks to attack the constitutionality of an act of the General Assembly (Ga. L. 1941, p. 487, Code, Ann. Supp., § 67-1308). The constitutional attack is made for the first time in the motion for new trial. "A question as to the constitutionality of a law cannot be raised for the first time in a motion for a new trial, where it was not made either by demurrer to the pleadings or by objections to evidence, or in some other appropriate way pending the trial." Stone v. State, 202 Ga. *Page 703 
203 (42 S.E.2d 727). Moreover, if such an attack were permissible, the question is not properly presented in this case, in that there is a failure to specify the provisions of the Constitution alleged to have been violated. Price v. State, 202 Ga. 205 (42 S.E.2d 728).
2. Special grounds 2 and 3 allege only "that the court erred in excluding from the evidence the following deed," after which allegation the substance of the deed is set forth. These grounds are too general and incomplete to require a ruling, because, if for no other reason, it is not alleged that the movant offered the evidence. Wight v. Schmidt, 111 Ga. 858
(36 S.E. 937); Ponder v. Walker, 107 Ga. 753 (2) (33 S.E. 690).
3. Finally, it is contended that the court erred in directing a verdict because "there was an issue of fact as to whether or not defendant had been in possession long enough to acquire title by prescription." There was no proof by the plaintiff in error of written evidence of title. The evidence upon which the plaintiff in error relied to prove title by prescription, by twenty years' adverse possession, is quoted in the statement of facts. Clearly such evidence is wholly insufficient to prove a prescriptive title, because it fails to meet the requirements of the Code, § 85-402. Ewing v. Tanner, 184 Ga. 773 (193 S.E. 243).
4. The evidence demanded a verdict for the plaintiff in the court below, and the trial judge did not err in directing a verdict.
Judgment affirmed. All the Justicesconcur.
 No. 16720. JULY 13, 1949. REHEARING DENIED JULY 27, 1949.
Marion Flynt Dumas, individually and in behalf of her minor daughter, brought an action for land against Asbury Flynt, alleging that the defendant had been in possession of the land for four years prior to the suit, and had recently undertaken to set up an adverse claim to the land and had refused to surrender possession to the petitioner.
The plaintiff based her right to recover upon a chain of title set forth in her petition as follows: (1) warranty deed from T. H. Phinazee to Ashley Phinazee, dated February 22, 1918, recorded June 29, 1918; (2) warranty deed from Ashley Phinazee to David Flynt (former husband of the plaintiff and father of the defendant), dated February 12, 1940, recorded February 14, 1940; (3) year's support set aside to the plaintiff and her minor child, in the Court of Ordinary of Lamar County, by order dated May 6, 1941; (4) order of the court of ordinary authorizing the plaintiff to sell the land.
The defendant answered, denying the material allegations of the petition, and further alleging: "The defendant and those under whom he holds have been in legal, notorious, and public possession, *Page 704 
cultivating a portion of the land, for more than 25 years. He therefore has a complete title by prescription as well as by written deeds." The defendant, by amendment, further alleged with respect to his title: "Defendant alleges that his grandfather, who now resides with him, rented this place, the land in question, almost 25 years ago from W. H. Phinazee, and after he became too feeble to work, his son, David Flynt, who was my father, moved on the place and continued to rent the same from Mr. Phinazee, his father, my grandfather continued to live on the place with my father. During the late thirties, David Flynt, my father, contracted with Mr. W. H. Phinazee for the purchase of the farm and at the time of his death he lacked a balance of paying the purchase-price. My father and I had a deal and trade in which it was agreed that, if I would assist him in paying for the place, we would be joint owners. Before the death of my father, he having been in bad health for some time, he told me that, if I would finish paying Mr. Phinazee for the place and take care of my grandfather and grandmother, I could have his interest, along with mine, thus making the place mine. This I agreed with him and have complied with our agreement. My grandmother died, but my grandfather is still living with me and I have continued to support him in accordance with the agreement made with my father, David Flynt. I paid Mr. Phinazee, after several years, the balance due on the place but failed to have him make me a deed only a short time ago."
No questions are presented to this court as to the sufficiency of the pleadings.
On the trial, the plaintiff introduced in evidence a complete chain of title to the land in dispute, beginning in the year 1898, as follows: (1) a loan deed from T. R. Phinazee to Security Investment Company, dated November 1, 1898, recorded December 10, 1898; (2) a quitclaim deed from Security Investment Company to T. R. Phinazee, dated June 26, 1914, recorded November 24, 1915; (3) a quitclaim deed from T. R. Phinazee to T. H. Phinazee, dated November 8, 1915, recorded November 23, 1915; (4) a warranty deed from T. H. Phinazee to Ashley Phinazee, dated February 22, 1918, recorded June 29, 1918; (5) a warranty deed from Ashley Phinazee to David Flynt, dated *Page 705 
February 12, 1940, recorded February 14, 1940; (6) certified copy of year's-support proceedings in the Ordinary's Court, Lamar County, Georgia, in which the land in dispute was regularly set aside as a year's support to the plaintiff at the June term, 1941, together with an acknowledgment of service of the application for year's support by Asbury Flynt, the defendant in the present proceedings, and an order of court granting the year's support; (7) certified copy of application of the plaintiff for leave to sell the land for the support of herself and child, and the order of the court granting leave to sell on March 26, 1945.
The plaintiff testified that she was the widow of David Flynt, and the person to whom the year's support was set aside; that, since the year's support had been set aside, she had paid the taxes on the land in dispute (the defendant admitted in open court that the plaintiff had paid the taxes on the land since the year's support was set aside to her, and that he had never paid any taxes on the property); that she had been letting the defendant live on the place, he had never paid any rent, and had never claimed to own it.
The defendant introduced no written evidence of title. He testified: "My grandfather rented the place from W. H. Phinazee. My father moved on this place a short time after he married this woman (the plaintiff). It wasn't very long — not quite a year. We were renting the place from Mrs. W. H. Phinazee. We have been in possession about 20 years, I think it is. We were in possession about 10 years before my father died. . . I reckon I was about five or six years old when I moved on this place. I am now 30 years old, it must have been 25 years ago — we went into possession of the land under Mr. Will Phinazee. . . When my grandfather moved on the place, he didn't claim any title to it or owned it. We went there as a tenant and rented it from Mr. Will Phinazee. I guess Mr. Ashley is Mr. Will's son — I don't know that Mr. Ashley is Mr. Will's son. I don't know Mr. Ashley. I don't know who paid Mr. Ashley if he has been paid anything. I don't know whether Will Phinazee was looking after it for him or not — we paid him. I finished paying for it after my daddy died. . . I claimed it after my daddy's death. I never claimed to own it until my stepmother wanted to sell it. I claimed it to myself — I didn't claim to her. *Page 706 
Me and my daddy was buying it together. I never paid any taxes on it; I finished paying Mr. Will Phinazee last year sometime — I paid him $50 the last time, that paid it up. I never paid any rent to him. . . I never claimed to own this property until this trial came up — to nobody but myself."
A verdict for the plaintiff was directed. The defendant's motion for new trial, as amended, was overruled; and to this judgment he excepted.