21430. WRIGHT *et al.* v. THE STATE.

SUBMITTED OCTOBER 9, 1961—DECIDED NOVEMBER 9, 1961—
REHEARING DENIED NOVEMBER 21, 1961.

454

*E. H. Gadsden, B. Clarence Mayfield,* for plaintiffs in error.
*Andrew J. Ryan, Jr., Solicitor-General, Sylvan A. Garfunkel, Assistant Solicitor-General,* contra.

QUILLIAN, Justice. ■ In their bill of exceptions the defendants assign error on the judgment sentencing each defendant (fourth ground) and on the denial of their motion for a new trial (third ground). However, in their brief to this court they completely omitted the fourth ground and merely referred to the third ground by asking: "Did the court commit error in overruling plaintiff's in error motion for new trial?" There was no argument, citation of authority, or statement that such grounds were still relied upon. Therefore, the applicable rule,

as laid down in *Henderson v. Lott,* 163 Ga. 326 (2) (136 SE 403), is: "Assignments of error not insisted upon by counsel in their briefs or otherwise will be treated by this court as abandoned. A mere recital in briefs of the existence of an assignment of error, without agrument or citation of authorities in its support, and without a statement that it is insisted upon by counsel, is insufficient to save it from being treated as abandoned." *Almand v. Pate,* 143 Ga. 711 (1) (85 SE 909); *Head v. Lee,* 203 Ga. 191, 202 (45 SE2d 666); *The B-X Corp. v. Jeter,* 210 Ga. 250 (4) (78 SE2d 790).

■  The second ground upon which the defendants rely is that the trial judge erred in failing to direct a verdict of acquittal for the defendants at the conclusion of the State's evidence. It is not error in a criminal case to refuse to direct a verdict of not guilty. *Winford v. State,* 213 Ga. 396, 397 (99 SE2d 120); *Williams v. State,* 206 Ga. 107 (10) (55 SE2d 589); *Coleman v. State,* 211 Ga. 704 (2) (88 SE2d 381); *Baugh v. State,* 211 Ga. 863 (1) (89 SE2d 504).

■  The first ground in the bill of exceptions is that the trial judge erred in overruling their general demurrers to the accusation. The defendants urge five contentions as to why *Code* § 26-5301, per se and as applied, violates rights secured to them by the Constitutions of the United States and of Georgia. Contentions (3) and (4) attack the Code section in question as unconstitutional as applied, since it was used to enforce racial discrimination, and as unconstitutional in that the arrest was pursuant to the policy, custom, and usage of the State of Georgia, which compels segregation of the races.

Neither of these two contentions can be ascertained from an examination of the accusation. A demurrer may properly attack only those defects which appear on the face of the petition, indictment, or, in this case, accusation. A demurrer which seeks to add facts not so apparent or to supply extrinsic matters must fail as a speaking demurrer. *Jackson v. State,* 64 Ga. 344; *Arthur v. State,* 146 Ga. 827 (92 SE 637). See also *Walters v. State,* 90 Ga. App. 360, 365 (83 SE2d 48).

■  Contentions (1) and (2) attack the Code section, on its face, as violative of due process of law guaranteed by the

Fourteenth Amendment to the United States Constitution and by the Georgia Constitution, arguing that said Code section is so vague that the defendants are not placed on notice as to what criminal act they have allegedly committed, rendering it impossible to answer the charge or to make legal defense, and unconscionably vague in that nowhere in the statute does there appear a definition of disturbing the public peace or committing any unlawful act.

Since the defendants were charged only with "disturbing the public peace," the alleged vagueness of "committing any unlawful act" need not be considered. Chaplinsky v. New Hampshire, 315 U. S. 568, 572 (62 SC 766, 86 LE 1031); *Whittle v. Jones*, 198 Ga. 538, 544 (32 SE2d 94); *Kryder v. State*, 212 Ga. 272, 274 (91 SE2d 612). Neither does the defendants' purported attack on the Code section under the Georgia Constitution raise any meritorious issue. In order to raise a question as to the constitutionality of a statute, the provision of the Constitution alleged to have been violated must be clearly specified and designated, reference being made to the part, paragraph, or section. *Clements v. Powell*, 155 Ga. 278, 280 (8) (116 SE 624); *Inlow v. State*, 168 Ga. 377 (1) (147 SE 881); *Johns v. State*, 180 Ga. 187, 188 (3) (178 SE 707); *Manufacturers Trust Co. v. Wilby-Kincey Service Corp.*, 204 Ga. 273, 274 (49 SE2d 514); *Krasner v. Rutledge*, 204 Ga. 380, 382 (49 SE2d 864).

The United States Supreme Court has held that a statute is not unconscionably vague where its provisions employ words with a well-settled common-law meaning (Waters-Pierce Oil Co. v. Texas, 212 U. S. 86, 108, 111, 29 SC 220, 53 LE 417; Nash v. United States, 229 U. S. 373, 376-378, 33 SC 780, 57 LE 1232; Hygrade Provision Co. v. Sherman, 266 U. S. 497, 502, 45 SC 141, 69 LE 402, approved in Connally v. General Const. Co., 269 U. S. 385, 391, 46 SC 126, 70 LE 322), or is not couched in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. Whitney v. California, 274 U. S. 357, 368 (47 SC 641, 71 LE 1095); Fox v. Washington, 236 U. S. 273, 276-278 (35 SC 383, 59 LE 573); Miller v. Strahl, 239 U. S.

426, 434 (36 SC 147, 60 LE 364); Omaechevarria v. Idaho, 246 U. S. 343, 348 (38 SC 323, 62 LE 763); United States v. Alford, 274 U. S. 264, 267 (47 SC 597, 71 LE 1040).

Here the term "disturbing the public peace" is of generic common-law origin. *Faulkner v. State*, 166 Ga. 645, 665 (144 SE 193); 11 C.J.S. 817, § 1. "Disturbing the peace" or its synonym, "breach of peace," has long been inherently encompassed in our law and is prevalent in the various jurisdictions. 11 C.J.S. 817, et seq.; § 2, et seq.; 8 Am. Jur. 834, et seq., § 3, et seq.

Further, the crime of unlawful assembly is itself of common-law origin (Reg. v. Pugh (1704), 87 Eng. Reprint 900; Rex v. Birt (1831), 172 Eng. Reprint 919; 91 C.J.S. 495, § 1; 46 Am. Jur. 126, § 2), is described in slightly varying forms in the vast majority of jurisdictions (Annot., 71 ALR2d 875), and in our own State was codified in the Penal Code of 1816 (Ga. L. 1816, p. 178; Lamar's Comp. p. 592).

"The uncertainty in a statute which will amount to a denial of due process of law is not the difficulty of ascertaining whether close cases fall within or without .the prohibition of the statute, but whether the standard established by the statute is so uncertain that it cannot be determined with reasonable definiteness that any particular act is disapproved; and a criminal statute is sufficiently definite if its terms furnish a test based on knowable criteria which men of common intelligence who come in contact with the statute may use with reasonable safety in determining its command." 163 A.L.R. 1108, annotating Minnesota v. Lanesboro Produce Co., 221 Minn. 246 (21 NW2d 792) (citing Nash v. United States, supra, United States v. Wurzbach, 280 U. S. 396, 50 SC 167, 74 LE 508, and Collins v. Com. of .Kentucky, 234 U. S. 634, 34 SC 924, 58 LE 1510). The language of the Code section in question is pronounced in terms so lucid and unambiguous that a person of common intelligence would discern its meaning and apprehend with what violation he was charged. *Farrar v. State*, 187 Ga. 401 (200 SE 803); *Fowler v. State*, 189 Ga. 733 (8 SE2d 77); *Watson v. State*, 192 Ga. 679 (16 SE2d 426).

■ The last contention (5) assigned, that the Code section

458

confers untrammeled and arbitrary authority upon the arresting officer, has no merit since we have determined that the statute has a clear-cut standard to apprise one of what constitutes a criminal act and thus to guide the conduct of such officer. There is no usurpation of judicial authority, nor the improper delegation of judicial discretion, since the officer involved only makes the arrest when, in his discretion, he believes a crime to have been perpetrated. The innocence or guilt, beyond a reasonable doubt, of the accused must still be determined by judicial process.

This is a case of first impression in this State, and our research has failed to reveal any full-bench decisions from other jurisdictions on the exact question of the constitutionality of a similar unlawful-assembly statute. Nevertheless, see Cole v. Arkansas, 338 U. S. 345 (70 SC 172, 94 LE 155). However, by applying the well-recognized principles and applicable tests above stated, we find no deprivation of the defendants' constitutional rights under the Fourteenth Amendment of the United States Constitution.

*Judgment affirmed. All the Justices concur.*