# WRIGHT ET AL. *v.* GEORGIA.

No. 68.  Argued November 7, 1962.—Decided May 20, 1963.

·*James M. Nabrit III* argued the cause for petitioners. With him on the brief were *Jack Greenberg, Constance Baker Motley, Leroy D. Clark* and *E. H. Gadsden.*

*Sylvan A. Garfunkel,* Assistant Solicitor General of Georgia, argued the cause for respondent. With him on the brief were *Eugene Cook,* Attorney General, *G. Hughel Harrison,* Assistant Attorney General, and *Andrew J. Ryan, Jr.,* Solicitor General.

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

Petitioners, six young Negroes, were convicted of breach of the peace for peacefully playing basketball in a public park in Savannah, Georgia, on the early afternoon of Monday, January 23, 1961. The record is devoid of evidence of·any activity which a breach of the peace statute might be thought to punish. Finding that there is no adequate state ground to bar review by this Court and that the convictions are- violative of due process of law secured by the Fourteenth Amendment, we hold that the judgments below must be reversed.

Only four witnesses testified at petitioners' trial: the two arresting officers, the city recreational superintendent, and a sergeant of police. All were prosecution witnesses. No witness contradicted any testimony given by any other witnesses. On the day in question the petitioners were playing in a basketball court at Daffin Park, Savannah, Georgia. The park is owned and operated by the city for recreational purposes, is about 50 acres in area, and is customarily used only by whites. A white woman notified the two police officer witnesses of the presence of petitioners in the park. They investigated, according to

one officer, "because some colored people were playing in the park. I did not ask this white lady how old these people were. As soon as I found out these were colored people I immediately went there." The officer also conceded that "I have never made previous arrests in Daffin Park because people played basketball there . . . . I arrested these people for playing basketball in Daffin Park. One reason was because they were negroes. I observed the conduct of these people, when they were on the basketball Court and they were doing nothing besides playing basketball, they were just normally playing basketball, and none of the children from the schools were there at that particular time." The other officer admitted that petitioners "were not necessarily creating any disorder, they were just 'shooting at the goal,' that's all they were doing, they wasn't disturbing anything." Petitioners were neat and well dressed. Nevertheless, the officers ordered the petitioners to leave the park. One petitioner asked one of the officers "by what authority" he asked them to leave; the officer responded that he "didn't need any orders to come out there . . . ." But he admitted that "it is [not] unusual for one to inquire 'why' they are being arrested." When arrested the petitioners obeyed the police orders and without disturbance entered the cruiser to be transported to police headquarters. No crowd assembled.

The recreational superintendent's testimony was confused and contradictory. In essence he testified that school children had preference in the use of the park's playground facilities but that there was no objection to use by older persons if children were not there at the time. No children were present at this time. The arrests were made at about 2 p. m. The schools released their students at 2:30 and, according to one officer, it would have been at least 30 minutes before any children could have reached the playground. The officer also stated that he

did not know whether the basketball court was reserved for a particular age group and did not know the rules of the City Recreational Department. It was conceded at the trial that no signs were posted in the park indicating what areas, if any, were reserved for younger children at particular hours. In oral argument before this Court it was conceded that the regulations of the park were not printed.

The accusation charged petitioners with assembling "for the purpose of disturbing the public peace . . . ." and not dispersing at the command of the officers. The jury was charged, with respect to the offense itself, only in terms of the accusation and the statute.[1] Upon conviction five petitioners were sentenced to pay a fine of $100 or to serve five months in prison. Petitioner Wright was sentenced to pay a fine of $125 or to serve six months in prison.

Petitioners' principal contention in this Court is that the breach of the peace statute did not give adequate warning that their conduct violated that enactment in derogation of their rights under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States. This contention was plainly raised at the trial, both in a demurrer to the accusation and in motions for a new trial, and was pressed on appeal to the Georgia Supreme Court. Both the demurrer and new trial motions raised a number of other issues. The Georgia Supreme Court held that error in the denial of the motions for a new trial could not be considered because it was not properly briefed on the appeal. But the court neverthe-

---

[1] The statute, Ga. Code Ann., 1953, § 26–5301, provides:

"Unlawful assemblies.—Any two or more persons who shall assemble for the purpose of disturbing the public peace or committing any unlawful act, and shall not disperse on being commanded to do so by a judge, justice, sheriff, constable, coroner, or other peace officer, shall be guilty of a misdemeanor."

less seemed to pass upon the claim because it had been raised in the demurrer,[2] and affirmed the convictions. 217 Ga. 453, 122 S. E. 2d 737. Certiorari was granted. 370 U. S. 935.

Since there is some question as to whether the Georgia Supreme Court considered petitioners' claim of vagueness

---

[2] The Georgia court refused to consider two of the constitutional claims asserted in the demurrer. But these allegations charged only unconstitutional administration of the statute. It is well settled in Georgia that the constitutionality of the statute upon which the charge is based may be attacked by demurrer. The Georgia Supreme Court, over 65 years ago, held that "[u]nder the general demurrer [to the accusation] the constitutionality of the law under which the accused was arraigned is brought in question." *Newman* v. *State,* 101 Ga. 534, 536, 28 S. E. 1005 (1897). This rule was later qualified to require the defendant to set out the ground of his attack with particularity in the demurrer. See, *e. g., Henderson* v. *Georgia,* 123 Ga. 465, 466, 51 S. E. 385, 386. In numerous cases it has been assumed that a constitutional objection on the ground of vagueness may properly be made by demurrer. *Teague* v. *Keith,* 214 Ga. 853, 108 S. E. 2d 489; *Harris* v. *State,* 191 Ga. 243, 12 S. E. 2d 64; *Carr* v. *State,* 176 Ga. 747, 169 S. E. 201; *Dalton* v. *State,* 176 Ga. 645, 169 S. E. 198; *Carr* v. *State,* 176 Ga. 55, 166 S. E. 827, 167 S. E. 103; *Hughes* v. *State Board of Medical Examiners,* 162 Ga. 246, 134 S. E. 42. See also *Henderson* v. *State,* 113 Ga. 1148, 39 S. E. 446. In other cases the Georgia Supreme Court has held that certain procedures, other than a demurrer, do not constitute the proper method to attack the constitutionality of the statute upon which the charge or claim was based. In each of these cases the Georgia court specifically stated that a demurrer would constitute a proper procedural device. *Eaves* v. *State,* 113 Ga. 749, 758, 39 S. E. 318, 321; *Boswell* v. *State,* 114 Ga. 40, 41, 39 S. E. 897; *Hendry* v. *State,* 147 Ga. 260, 265, 93 S. E. 413, 415; *Starling* v. *State,* 149 Ga. 172, 99 S. E. 619; *Savannah Elec. Co.* v. *Thomas,* 154 Ga. 258, 113 S. E. 806; *Moore* v. *State,* 194 Ga. 672, 22 S. E. 2d 510; *Stone* v. *State,* 202 Ga. 203, 42 S. E. 2d 727; *Loomis* v. *State,* 203 Ga. 394, 405, 47 S. E. 2d 58, 64; *Flynt* v. *Dumas,* 205 Ga. 702, 54 S. E. 2d 429; *Corbin* v. *State,* 212 Ga. 231, 91 S. E. 2d 764; *Renfroe* v. *Wallace,* 214 Ga. 685, 107 S. E. 2d 225.

Respondent does not argue that an adequate state ground exists insofar as petitioners' claim of vagueness was raised in the demurrer.

to have been properly raised in the demurrer,[3] we prefer to rest our jurisdiction upon a firmer foundation. We hold, for the reasons set forth hereinafter, that there was no adequate state ground for the Georgia court's refusal to consider error in the denial of petitioners' motions for a new trial.

## I.

A commentator on Georgia procedure has concluded that "[p]robably no phase of pleading in Georgia is fraught with more technicalities than with respect to raising constitutional issues."[4] Examination of the Georgia cases bears out this assertion. In an extraordinary number an attempt to raise constitutional issues has been frustrated by a holding that the question was not properly raised or pursued. But "[w]hatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." *Davis* v. *Wechsler,* 263 U. S. 22, 24. See also *Love* v. *Griffith,* 266 U. S. 32; *Stromberg* v. *California,* 283 U. S. 359; *Terminiello* v. *Chicago,* 337 U. S. 1; *Staub* v. *City of Baxley,* 355 U. S. 313; *N. A. A. C. P.* v. *Alabama,* 357 U. S. 449.

In this case the Georgia Supreme Court held that error in the denial of the motions for a new trial could not be considered because "[t]here was no argument, citation of authority, or statement that [the grounds for reversal stated in the new trial motions] . . . were still relied upon." The court found "the applicable rule, as laid

---

[3] The question arises because of the Georgia rule against speaking demurrers, *i. e.,* demurrers which rely upon facts not stated in the accusation. Though the demurrer itself (in stating the claim of vagueness) did not set forth new facts, petitioners' constitutional claim is established only by considering the State's evidence in connection with the accusation and the statute.

[4] Leverett, Hall, Christopher, Davis and Shulman, Georgia Procedure and Practice (1957), 38.

down in *Henderson v. Lott,* 163 Ga. 326 (2) (136 SE 403), [to be] . . . : 'Assignments of error not insisted upon by counsel in their briefs or otherwise will be treated by this court as abandoned. A mere recital in briefs of the existence of an assignment of error, without argument or citation of authorities in its support, and without a statement that it is insisted upon by counsel, is insufficient to save it from being treated as abandoned.' " 217 Ga., at 454–455, 122 S. E. 2d, at 740. Presumably the court was restating the requirements of § 6–1308 of the Georgia Annotated Code of 1935. That section provides: "All questions raised in the motion for new trial shall be considered by the appellate court except where questions so raised are expressly or impliedly abandoned by counsel either in the brief or upon oral argument. A general insistence upon all the grounds of the motion shall be held to be sufficient."

To ascertain the precise holding of the Georgia court we must examine the brief which the petitioners submitted in connection with their appeal. It specifically assigned as error the overruling of their motions for a new trial. And in the section of the brief devoted to argument it was stated:

> "Plaintiffs-in-Error had assembled for the purpose of playing basketball and were in fact only playing basketball in a municipally owned park, according to the State's own evidence. Nevertheless, they were arrested and convicted under the said statute which prohibited assemblies for the purpose of 'disturbing the public peace or committing any unlawful act.' Where a statute is so vague as to make criminal an innocent act, a conviction under it cannot be sustained. *Murray Winters v. New York,* 333 U. S. 507. . . . Plaintiffs-in-Error could not possibly have predetermined from the wording of

the statute that it would have punished as a misdemeanor an assembly for the purpose of playing basketball."

Obviously petitioners did in fact argue the point which they press in this Court. Thus the holding of the Georgia court must not have been that the petitioners abandoned their argument but rather that the argument could not be considered because it was not explicitly identified in the brief with the motions for a new trial. In short the Georgia court would require the petitioners to say something like the following at the end of the paragraph quoted above: "*A fortiori* it was error for the trial court to overrule the motions for a new trial." As was said in a similar case coming to us from the Georgia courts, this "would be to force resort to an arid ritual of meaningless form." *Staub* v. *City of Baxley, supra,* at 320. The State may not do that here any more than it could in *Staub.* Here, as in *Staub,* the state ground is inadequate. Its inadequacy is especially apparent because no prior Georgia case which respondent has cited nor which we have found gives notice of the existence of any requirement that an argument in a brief be specifically identified with a motion made in the trial court. "[A] local procedural rule, although it may now appear in retrospect to form part of a consistent pattern of procedures . . . , cannot avail the State here, because petitioner[s] could not fairly be deemed to have been apprised of its existence. Novelty in procedural requirements cannot be permitted to thwart review in this Court . . . ." *N. A. A. C. P.* v. *Alabama, supra,* at 457. We proceed to a consideration of the merits of petitioners' constitutional claim.

## II.

Three possible bases for petitioners' convictions are suggested. First, it is said that failure to obey the command of a police officer constitutes a traditional form of breach of the peace. Obviously, however, one cannot be pun-

ished for failing to obey the command of an officer if that command is itself violative of the Constitution. The command of the officers in this case was doubly a violation of petitioners' constitutional rights. It was obviously based, according to the testimony of the arresting officers themselves, upon their intention to enforce racial discrimination in the park. For this reason the order violated the Equal Protection Clause of the Fourteenth Amendment. See *New Orleans Park Improvement Assn.* v. *Detiege,* 358 U. S. 54, affirming 252 F. 2d 122. The command was also violative of petitioners' rights because, as will be seen, the other asserted basis for the order—the possibility of disorder by others—could not justify exclusion of the petitioners from the park. Thus petitioners could not constitutionally be convicted for refusing to obey the officers. If petitioners were held guilty of violating the Georgia statute because they disobeyed the officers, this case falls within the rule that a generally worded statute which is construed to punish conduct which cannot constitutionally be punished is unconstitutionally vague to the extent that it fails to give adequate warning of the boundary between the constitutionally permissible and constitutionally impermissible applications of the statute. Cf. *Winters* v. *New York,* 333 U. S. 507; *Stromberg* v. *California,* 283 U. S. 359; see also *Cole* v. *Arkansas,* 333 U. S. 196.

Second, it is argued that petitioners were guilty of a breach of the peace because their activity was likely to cause a breach of the peace by others. The only evidence to support this contention is testimony of one of the police officers that "The purpose of asking them to leave was to keep down trouble, which looked like to me might start—there were five or six cars driving around the park at the time, white people." But that officer also stated that this "was [not] unusual traffic for that time of day." And the park was 50 acres in area. Respondent

contends the petitioners were forewarned that their conduct would be held to violate the statute. See *Samuels* v. *State,* 103 Ga. App. 66, 118 S. E. 2d 231. But it is sufficient to say again that a generally worded statute, when construed to punish conduct which cannot be constitutionally punished, is unconstitutionally vague. And the possibility of disorder by others cannot justify exclusion of persons from a place if they otherwise have a constitutional right (founded upon the Equal Protection Clause) to be present. *Taylor* v. *Louisiana,* 370 U. S. 154; *Garner* v. *Louisiana,* 368 U. S. 157, 174; see also *Buchanan* v. *Warley,* 245 U. S. 60, 80–81.

Third, it is said that the petitioners were guilty of a breach of the peace because a park rule reserved the playground for the use of younger people at the time. However, neither the existence nor the posting of any such rule has been proved. Cf. *Lambert* v. *California,* 355 U. S. 225, 228. The police officers did not inform them of it because they had no knowledge of any such rule. Furthermore, it is conceded that there was no sign or printed regulation which would give notice of any such rule.

Under any view of the facts alleged to constitute the violation it cannot be maintained that petitioners had adequate notice that their conduct was prohibited by the breach of the peace statute. It is well established that a conviction under a criminal enactment which does not give adequate notice that the conduct charged is prohibited is violative of due process. *Lanzetta* v. *New Jersey,* 306 U. S. 451; *Connally* v. *General Construction Co.,* 269 U. S. 385; *United States* v. *Cohen Grocery Co.,* 255 U. S. 81; see also *United States* v. *National Dairy Products Corp.,* 372 U. S. 29.

*Reversed.*