1014

No. 77–6025. HUFFMAN *v.* FLORIDA. Sup. Ct. Fla. Certiorari denied. 

MR. JUSTICE MARSHALL, with whom MR. JUSTICE BRENNAN joins, dissenting.

Petitioner, a Negro male, was convicted by an all-white jury of raping a white woman, and was sentenced to life imprisonment.[1] In a post-conviction proceeding, he moved for a new trial on the ground that racial bias in the jury selection process deprived him of his Sixth Amendment right to an impartial jury and his Fourteenth Amendment rights to equal protection and due process. The trial court denied the motion, and the Florida District Court of Appeal affirmed without opinion, 336 So. 2d 612 (1976). With three justices dissenting, a four-man majority of the Florida Supreme Court dismissed petitioner's certiorari petition for lack of jurisdiction, without explanation. 350 So. 2d 5 (1977).

There can be no dispute that Negroes were systematically excluded from petitioner's jury in violation of the Fourteenth Amendment. The all-white jury was selected from an all-white venire, drawn from the same master jury list which the Florida District Court of Appeal held, in *Jordan* v. *State,* 293 So. 2d 131 (1974), to have been composed in a racially discriminatory fashion. As the District Court of Appeal noted in *Jordan,* the jury list was derived by a method rife with opportunity for racial discrimination, and reflected a substantial statistical disparity between the proportion of Negroes included and those who were eligible.[2] The State was unable

---

[1] Petitioner was also convicted of burglary, for which he was given a concurrent life sentence. On appeal, the convictions were affirmed, but the concurrent sentence for burglary was reduced to 15 years. 301 So. 2d 815 (Fla. App. 1974).

[2] Petitioner was convicted in November 1972 in Sarasota County, Fla. The *Jordan* court found that the master jury list in use in Sarasota County at that time was compiled from voter registration cards, which indicated the race of the voter, and were taken from only 4 or 5 out of the 45

in *Jordan* to rebut the prima facie case of discrimination thus demonstrated, see, *e. g.*, *Castaneda* v. *Partida,* 430 U. S. 482, 494–495 (1977); *Alexander* v. *Louisiana,* 405 U. S. 625, 630–631 (1972), and the State does not here contest that the jury which convicted petitioner was selected in an unconstitutional manner.

The State argues, instead, that we are foreclosed from reaching the merits of petitioner's claim by virtue of his failure to raise the issue by written motion prior to selection of the individual jurors, as required by Fla. Rule Crim. Proc. 3.290.[3] But petitioner did present a timely oral motion, and, under the circumstances of this case, adherence to the requirement of a written motion would serve only "to force resort to an arid ritual of meaningless form." *Staub* v. *City of Baxley,* 355 U. S. 313, 320 (1958). As soon as he saw the all-white venire, petitioner's counsel moved to strike the panel, and requested

---

voting precincts in the county. The jury commissioners did not use objective criteria for choosing precincts, and the precincts that were selected here "had virtually no registered black voters," whereas approximately 50% of the registered voters in two precincts, and 2.65% of the voters in the county as a whole, were Negroes. 293 So. 2d, at 132–133, and n. 7. The *Jordan* court found that, out of a total of 1,344 persons on the jury list, at most 4 were Negroes (0.297%), and that the chance of drawing such a small percentage of Negroes in a random sample of 1,344 of the registered voters in the county as a whole would be less than 1 in 10 million. *Id.,* at 133 n. 4.

[3] Rule 3.290 provides:

"The state or defendant may challenge the panel. A challenge to the panel may be made only on the ground that the prospective jurors were not selected or drawn according to law. Challenges to the panel shall be made and decided before any individual juror is examined, unless otherwise ordered by the court. A challenge to the panel shall be in writing and shall specify the facts constituting the ground of the challenge. Challenges to the panel shall be tried by the court. Upon the trial of a challenge to the panel the witnesses may be examined on oath by the court and may be so examined by either party. If the challenge to the panel is sustained, the court shall discharge the panel. If the challenge is not sustained, the individual jurors shall be called."

an opportunity to question the jury commissioners to determine whether Negroes had been systematically excluded.[4] The trial judge expressed willingness to allow questioning of the supervisor of elections but not the jury commissioners, and—because the supervisor of elections would not have been able to offer any relevant testimony—counsel agreed to proceed with trial, with the "understand[ing] . . . that I have placed on the record that the jury panel is white." App. to Pet. for Cert. E–6.

The jury commissioners' testimony clearly was essential to development of petitioner's discrimination claim. See n. 2, *supra*. Thus, rejection of counsel's request to interrogate the commissioners was tantamount to denial of petitioner's claim, and the filing of a written motion would have served no immediate purpose and would have unnecessarily delayed the proceedings.[5] The dissenting opinions in the Florida Supreme Court concluded that in this situation petitioner was not foreclosed as a matter of state law from raising his claim on collateral attack, notwithstanding his failure to comply with the letter of Rule 3.290. See 350 So. 2d, at 7–8 (Boyd, J., dissenting); *id.*, at 8–9 (Sundberg, J., dissenting). But, even assuming that the Florida Supreme Court's dismissal for lack of jurisdiction was based on petitioner's failure to make a written motion,[6] such a purely formalistic application of a

---

[4] Counsel explained his failure to file a written motion, with the following:

"I might say that I did not file such a motion in writing for the Court because I didn't see the panel until today." App. to Pet. for Cert. E–3.

[5] Under these circumstances, it is simply untenable to suggest, as the State does, Response to Pet. for Cert. 1, that petitioner "abandoned" his oral motion by not accepting the trial judge's offer to allow questioning of the supervisor of elections.

[6] It is not clear whether the court's dismissal was based on petitioner's failure to comply with Rule 3.290, or solely on a conclusion that there was no direct conflict between the decision of the District Court of Appeal in this case, and the decision of that court in *Jordan* v. *State*. See Fla.

state procedural rule does not constitute an independent and adequate state ground barring review in this Court. Cf. *Wright* v. *Georgia,* 373 U. S. 284, 289–291 (1963); *NAACP* v. *Alabama ex rel. Flowers,* 377 U. S. 288, 293–297 (1964). As Mr. Justice Holmes so eloquently stated: "Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." *Davis* v. *Wechsler,* 263 U. S. 22, 24 (1923).

I would grant certiorari and set the case for oral argument.

MR. JUSTICE STEVENS.

As MR. JUSTICE MARSHALL points out, the dissenting members of the Florida Supreme Court expressed the opinion that, as a matter of state law, the petitioner could assert his federal claim in a state collateral proceeding. *Ante,* at 1016. The majority of that court, however, concluded that the claim could not be raised in such a proceeding. They therefore did not decide the federal constitutional question. Since petitioner has now exhausted his state remedies, the federal question remains open for decision in a federal habeas corpus proceeding.

As the petition comes to us, we may assume that a summary reversal might have been appropriate on direct review of petitioner's conviction, and also that a collateral attack in the federal court should succeed. It does not follow, however, that this Court has the power to compel a State to employ a collateral post-conviction remedy in which specific federal claims may be raised. See *Case* v. *Nebraska,* 381 U. S. 336. Accordingly, totally apart from the considerations discussed by MR. JUSTICE MARSHALL, there are serious procedural questions

Const., Art. 5, § 3 (b) (3) (limiting certiorari jurisdiction of Florida Supreme Court to cases in which there is a "direct conflict" between decisions of district courts of appeal, and to several other categories of cases not relevant here.)

that must be answered before addressing the merits of petitioner's federal claim. In making this observation I do not presume to explain the reasons for the Court's action; I write only to identify this as one of the many cases in which a persuasive dissent may create the unwarranted impression that the Court has acted arbitrarily in denying a petition for certiorari.