171 So.2d 456

Joe Lewis CLEMONS

v.

**CITY OF BIRMINGHAM.**

6 Div. 162.

Supreme Court of Alabama.

Jan. 7, 1965.

Rehearing Denied Feb. 18, 1965.

448

Arthur Shores and Orzell Billingsley, Jr., Birmingham, Jack Greenberg and Norman C. Amaker, New York City, for petitioner.

Wm. C. Walker, Birmingham, opposed.

LAWSON, Justice.

Petition for writ of certiorari by Joe Lewis Clemons to reverse the judgment of the Court of Appeals in the case of Clemons v. City of Birmingham, Ala.App. 171 So.2d 455.

Clemons, a negro, was convicted in the Circuit Court of Jefferson County of violating § 1436 of the 1944 General City Code of Birmingham, as amended, which reads in pertinent part as follows:

"Sec. 1436. After Warning.

"(a) It shall be unlawful for any person to go upon or remain upon the lands, buildings or premises of another, or any part, portion or area thereof, after having been forbidden to do so or warned not to do so, either orally or in writing, by the owner, lessee, custodian or other person in possession thereof, his agent or representative, or after having been forbidden to do so or warned not to do so by a sign or signs posted on such lands, buildings, premises or part, portion or area thereof at a place or places where such sign, or signs, may be reasonably seen, provided, that this section shall not apply to police officers in the discharge of official duties."

Clemons appealed to the Court of Appeals, which court on October 6, 1964, affirmed the judgment of the trial court without opinion. Application for rehearing, duly filed, was overruled by the Court of Appeals. Following that action, Clemons filed in this court the petition presently under consideration.

We have frequently said that where the Court of Appeals does not render an opinion a review by this court cannot be undertaken.—Smith v. State, 241 Ala. 99, 1 So.2d 313; Honeycutt v. State, 264 Ala. 70, 84 So.2d 362, and cases cited; Crawford v. State, 276 Ala. 98, 159 So.2d 457.

■ However, in State v. Parrish, 242 Ala. 7, 5 So.2d 828, we held that where the question as to the correctness of a judgment of the Court of Appeals is primarily a federal question it "must be determined from the whole record before us on petition for certiorari," irrespective of the fact that the Court of Appeals did not write an opinion. See Espey v. State, 263 Ala. 207, 82 So.2d 270; Lindsay v. State, 273 Ala. 325, 139 So.2d 119. Of course, we do not search the record for federal questions, but treat only those matters raised in the petition for certiorari we consider to be federal questions.

In support of his first ground for reversal of the judgment of the Court of Appeals, petitioner Clemons says in his brief that "a conviction will not be sustained unless there is evidence of every essential element of the offense" and that "there was no evidence that petitioner was forbidden to remain on the premises of Holiday Inn by Mr. Walter L. Anderson." Anderson was apparently the manager of Holiday Inn. He referred to himself as the innkeeper.

■ In dealing with the question thus presented, we are not concerned with the sufficiency of the evidence, but with the question as to whether Clemons' conviction rests upon any evidence at all, for it is a violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States to convict and punish a person without any evidence of his guilt.—Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed. 2d 654; Garner v. Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207.

Clemons was one of a group of twenty-four or twenty-five persons who entered a Holiday Inn located at 1313 Third Avenue North, in the City of Birmingham, about 1:10 P.M. on the afternoon of May 7, 1963. Holiday Inn is private property licensed "under the City of Birmingham, the state and the county" to do business as a motel. It rents rooms to members of the public and has dining facilities which are open to the public.

It is not clear from the evidence as to whether the group was composed entirely of negroes, but the record indicates that Clemons was not the only negro in the group. Some members of the group sat in chairs, others sat on tables and others sat or sprawled out on the floor. There were not sufficient chairs in the small lobby for all of them to be seated, so some of them remained standing. Tendencies of the evidence indicate that they split up into two or three smaller groups. They were in the way of others who sought to pass to and from the restaurant, which was in another room. They interfered with the motel personnel in the performance of their duties.

Shortly after the twenty-four or twenty-five persons entered the lobby, Walter L. Anderson, the "innkeeper," was notified by some of his clerks that "there was a disturbance in the lobby." Anderson went into the lobby and told the "group of people," including Clemons, that he was the innkeeper and he "asked them to vacate the premises, that they were causing a disturbances [sic] and also in the way of my doing business."

Apparently no member of the group acceded to Anderson's request. They remained as they were around the lobby. Anderson repeated his request that the group leave. When his plea went unheeded Anderson told one of his employees "to call the City and report it." As the employee was making the call one Bowers, who was in the lobby, approached Anderson and identified himself as a police officer. Anderson told Bowers that he "wanted

them to move out of the way to where I could do business." Bowers then reminded the members of the group that Anderson had asked them to leave. At Bowers' suggestion Anderson repeated his request. This request by Anderson went unheeded. Bowers then "asked them to leave and told them if they did not they would be placed under arrest." They did not move. Apparently Bowers called the police department of the City of Birmingham. In response to a call Office Grubbs went to the motel. He saw Clemons and others "sitting around in the lobby." The people he saw were not loud and boisterous. He heard no one ask them to leave. He placed the members of the group under arrest on instructions from Bowers. The entire group, including Clemons, "were placed under arrest and placed in jail."

■ In support of the first asserted ground for reversal it is argued in brief filed here on behalf of Clemons that the evidence which we have summarized above fails to show that Clemons was asked to leave the premises of Holiday Inn and it is, therefore, argued that Clemons' conviction was illegal because one of the essential elements of the offense for which he was convicted was not proven. It is conceded that a warning not to stay on the premises was directed to the entire group of which Clemons was a member, but such a warning is said to be insufficient. It is contended that a warning should have been directed to Clemons individually. We do not agree. If Clemons was not entitled to be on the premises of the Holiday Inn then the warning to leave given him, as a member of the group, was sufficient in our opinion to meet the warning requirements of § 1436 of the 1944 General City Code of Birmingham, as amended.

■ The next ground for reversal asserted in Clemons' petition is that the ordinance under which he was charged (§ 1436 of the 1944 General City Code of Birmingham, as amended) is "inconsistent with due process of law as guaranteed by the Fourteenth Amendment to the United States

Constitution because the ordinance does not clearly specify what type of conduct is proscribed."

In our opinion § 1436, supra, clearly specifies that the type of conduct therein made a criminal offense is trespass after warning, the act of going upon the premises of another after having been forbidden to do so or warned not to do so, and the act of remaining on the premises of another after having been forbidden to do so or warned not to do so. Section 1436, supra, is not in our opinion subject to the construction that it makes unlawful the act of remaining on the premises of another without having been forbidden to do so or warned to leave.

As we have said above, the evidence shows that Clemons remained on the premises of Holiday Inn after he was asked to leave. If he had no right to remain on the premises he was guilty of an act proscribed by § 1436, supra.

We see no field of operation here for the rule stated in Wright v. Georgia, 373 U.S. 284, 83 S.Ct. 1240, 10 L.Ed.2d 349, in the following language: "A generally worded statute which is construed to punish conduct which cannot constitutionally be punished is unconstitutionally vague to the extent that it fails to give adequate warning of the boundary between the constitutionally permissible and constitutionally impermissible applications of the statute." Section 1436, supra, has not been said to have application to those who have a right to be on the premises ordered to be vacated. It applies to trespassers.

We hold that § 1436, supra, is not invalid for the reasons asserted by petitioner.

■ We come to the next ground for reversal relied upon by Clemons in his petition. It is that his arrest and prosecution "served racial discrimination, contrary to the equal protection and due process clause of the Fourteenth Amendment to the Constitution of the United States." In support of that assertion Clemons says in his brief as follows: "Despite the fact that petitioner was ostensibly convicted for trespass after warning, he was actually sentenced to jail and fines for having violated the segregation policy of the City of Birmingham."

In our opinion there is no evidence in the record to support that statement. At the time of Clemons' arrest and conviction § 369 of the 1944 General Code of the City of Birmingham provided:

"Separation of races. It shall be unlawful to conduct a restaurant or other place for the serving of food in the city, at which white and colored people are served in the same room, unless such white and colored persons are effectually separated by a solid partition extending from the floor upward to a distance of seven feet or higher, and unless a separate entrance from the street is provided for each compartment."

But there is no evidence in this record to show that the Holiday Inn restaurant was so constructed or that Clemons or any member of his group was refused service in the restaurant. It cannot be determined from the record before us why Clemons and his associates went to the Holiday Inn and conducted a so-called sit-in demonstration. What their grievance was, if any, is not disclosed. For aught appearing Holiday Inn practiced no form of racial discrimination and it affirmatively appears that negroes had been accepted as guests of Holiday Inn prior to the time of the demonstration. The evidence does not show that Clemons or any of the other demonstrators carried placards whereby they could publicize their grievance, if any. (By this statement we do not indicate that it is our view that a group of people has the right to completely occupy the lobby of a hotel or motel solely for the purpose of publicizing some alleged grievance.) They simply went into the small lobby and so placed themselves as to interfere with the business activities of Holiday Inn without seeking room or food and without making known to the management or the public the purpose

of their visit. They did not enter the restaurant and demand service or seat themselves at a counter or table, thereby at least suggesting that they sought services of the restaurant offered to the public, as appears to have been the situation in Peterson v. City of Greenville, 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323, and in Gober v. City of Birmingham, 373 U.S. 374, 83 S.Ct. 1311, 10 L.Ed.2d 419. In Lombard v. State of Louisiana, 373 U.S. 267, 83 S.Ct. 1122, 10 L.Ed.2d 338, Lombard and his companions entered a store in New Orleans, Louisiana, sat at a lunch counter reserved for white people, and requested service, which was refused.

We do not believe that the recent decision of the Supreme Court of the United States in Hamm v. City of Rock Hill, South Carolina, and Lupper v. Arkansas, 85 S.Ct. 384, released on December 14, 1964, has application to the case at bar. In those two cases, which were consolidated for argument, the petitioners had been convicted of violating state laws which made it an offense to remain on the premises of a business establishment after having been requested to leave. Petitioners were convicted prior to the enactment of the Civil Rights Act of 1964, but the Court held:

> "We hold that the convictions must be vacated and the prosecutions dismissed. The Civil Rights Act of 1964 forbids discrimination in places of public · accommodation and removes *peaceful attempts to be served* on an equal basis from the. category of punishable activities. Although the conduct in the present cases occurred prior to enactment of the Act, the still pending convictions are abated by its passage." (Emphasis supplied)

As pointed out previously, the evidence in this case does not support a finding that Clemons or any of his associates entered the restaurant or sought to enter it. They did not seek to obtain a room in the motel. So even if it be assumed that Holiday Inn was engaged in interstate commerce, we do not believe that under the evidence presented it can be said that there has been a violation of the public accommodations provision of the Civil Rights Act of 1964.

We hold that the evidence does not support a finding that Clemons was sentenced to jail and fined for having violated the segregation policy of the City of Birmingham. Nor can it be said that the evidence justifies a finding that Anderson, the innkeeper, "was merely conforming to the segregation provisions of § 369 of the Code of the City of Birmingham when he ordered the removal of the Negro group in the lobby," as asserted in Clemons' brief. There is nothing in the record to show a compliance by Holiday Inn with the provisions of § 369, supra, an unconstitutional enactment, which was expressly repealed by the City of Birmingham subsequent to Clemons' conviction.

We repeat that one may search this record in vain for the reason why Clemons and his associates entered the lobby and so placed themselves as to occupy all of the available chairs and to interfere with the normal business activities of Holiday Inn.

The fourth and last ground for reversal asserted by Clemons in his petition is to the effect that the trial court erred in refusing to quash the petit jury on the ground that under the evidence presented by him he made a prima facie case of systematic exclusion of negroes from jury service which was not rebutted by the State.

In support of his "Motion to Quash the Venire" and his "Motion to Declare Void Composition of Jury Sworn to Try Defendant," Clemons called one witness, Henry G. Matthews, the jury room bailiff of Jefferson County. Matthews stated that he had served in that position since 1962; that he observed ten negroes in the jury room on the morning of the trial; that he has not seen over two negroes serve on any single petit jury since he became jury room bailiff, but there are a large number that "appear in the venire."

· In a colloquy between the Court and counsel it was agreed that on the list

**452**

from which the Clemons jury was struck there were the names of six or seven negroes. There were twenty-seven names on the list.

■■ It is, of course, well established that a criminal defendant is denied equal protection of law as guaranteed by the Fourteenth Amendment if he is indicted by a grand jury or tried by a petit jury from which members of his race have been excluded because of their race.—Eubanks v. State of Louisiana, (decided May 26, 1958) 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991, and cases cited. However, in our opinion the evidence presented by Clemons in support of his motions was not sufficient to create a prima facie showing that negroes had been systematically excluded because of race from the trial venire or from the jury box from which the venire was drawn. Neither of the motions which attacked the petit jury is a sworn motion. However, we observe that the motion to quash contains averments to the effect that the 1960 census shows that the white male population of Jefferson County twenty-one years of age and over numbers 120,205, while the negro male population of the county in the same age group totals 51,961. If this statement is accepted as being correct, Clemons has not proven discrimination by showing that out of the twenty-seven persons whose names appeared on the list from which the jury was selected, there were only six or seven names of colored people. As far as we are advised lawyers still have the right to strike from a jury list the name of any person for any reason. Evidence which merely shows that no more than two negroes had been observed serving on a trial jury by a single witness is not sufficient to make a prima facie showing of exclusion from the jury boxes because of race.

We hold the motions here under discussion were overruled without error.

Writ denied.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.