BOOKOUT, Judge.
Criminal trespass after warning; sentence: $300 fine plus costs.
On November 8, 1977, appellant was in the downtown office of Birmingham Trust National Bank (hereinafter BTNB) for the purpose of negotiating government checks. While in BTNB (in the presence of BTNB customers and employees), appellant yelled out: “I don’t like for a Goddamned nigger to be staring at me.” The comment was directed to Mr. Reaf Blue, a black BTNB security guard. Appellant repeated the statement two more times after being warned to watch his language by two BTNB security guards, Mr. Leonard Stanley and Mr. Joseph Davis. After the second warning, appellant was allowed to complete his banking business and was then escorted from the bank by BTNB security guards to await the arrival of a Birmingham police officer.
Rufus Allen, a senior vice president of BTNB, stated to appellant in the presence of Officer Jan Snider of the Birmingham Police Department:
“ . . . I did not appreciate the abusive language that he had used in the presence of my employees and my customers and that I was closing his account so he would not have any reason for ever coming back in the bank and I didn’t want him to come back in the bank.”
Officer Snider then asked appellant if he understood the warning and repeated it to appellant. Officer Snider told appellant that he could go free but not to go back into the bank; that if he did go back into the bank, he would be arrested for trespass after warning. Appellant stated that he would “have to call your bluff,” went back into the bank, and was arrested for trespass after warning. Appellant was tried without a jury.
I
Appellant contends that the Birmingham ordinance under which he was prosecuted is unconstitutionally overbroad and vague on its face in violation of the First and Fourteenth Amendments to the United States Constitution. The pertinent provisions of § 54-1, Birmingham City Code 1964, as amended, are as follows:
“(a) It shall be unlawful for any person to go upon or remain upon the lands, buildings, or premises of another or any part, portion or area thereof after having been forbidden to do so or warned not to do so, either orally or in writing, by the owner, lessee, custodian or other person in possession thereof, his agent or representative. . . . ”
A

Overbreadth

Appellant contends that the Birmingham ordinance is so overbroad and all embracing as to place first amendment freedoms in jeopardy. Appellant was arrested for trespass after warning as a direct result of an alleged disturbance caused by means of speech. He argues that the exercise of free speech on public property is a constitutionally protected right.
*879 First, BTNB is private property and not public property. This court takes judicial note that national banks are corporations organized and existing under the laws of the United States. Adler v. First National Bank of Birmingham, 233 Ala. 325, 171 So. 904 (1937). Property does not “lose its private character merely because the public is generally invited to use it for designated purposes.” Lloyd Gorp., Ltd. v. Tanner, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1872). See also: Curtis v. Rosso & Mastracco, Inc., D.C.Va., 413 F.Supp. 804 (1976). Secondly, as stated in Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284 (1971):
“ . . . [T]he First and Fourteenth Amendments have never been thought to give absolute protection to every individual to speak whenever or wherever he pleases or to use any form of address in any circumstances that he chooses. . . ”
BTNB, through its agent, vice president Allen, had a legitimate right to order anyone from its premises in order to avoid a disturbance. Johnson v. State, 277 Ala. 655, 173 So.2d 824 (1964). “If one is granted the liberty to invade another’s private property over the objection of the owner for any period of time, that same liberty would continue for all time, and the result is destruction of property without due process in direct violation of the Constitution.” Clark v. State, 219 Ga. 680, 135 S.E.2d 270, 272 (1964). We hold that the Birmingham ordinance is not so broad that its sanctions apply to conduct protected by the Constitution.
B

Vagueness

Appellant’s contention that the Birmingham trespass ordinance is unconstitutionally vague and in violation of the Fourteenth Amendment to the United States Constitution has no merit. This question was answered in Clemons v. City of Birmingham, 277 Ala. 447, 171 So.2d 456 (1965) and Thomas v. City of Birmingham, 42 Ala. App. 542, 171 So.2d 84, cert. denied, 277 Ala. 702, 171 So.2d 85 (1964). The language of the ordinance is clear and precise. It states exactly what conduct is unlawful and provides for a warning to be given. A person of common intelligence would not have to guess at the meaning of the ordinance. Kahalley v. State, 254 Ala. 482, 48 So.2d 794 (1950).
II
Appellant’s next contention is that the City failed to prove that the premises upon which he entered were in possession of BTNB as alleged in the complaint.
[4] “Possession is a collective fact to which a witness may testify.” Lawson v. Garrett, 286 Ala. 125, 237 So.2d 648 (1970). Mr. Leonard Stanley testified that he was employed by BTNB as a guard supervisor, his salary was paid by BTNB, and he had worked at the downtown office for seventeen years. Mr. Reaf Blue testified that he was a security guard for BTNB and had worked at the downtown office for six and one-half years. Mr. R. C. Allen testified that he was a senior vice president of BTNB and had worked at the downtown office for forty years. Mr. Allen testified that BTNB had occupied the downtown location since October 26, 1923. Mr. Joseph Davis testified that he had been employed by BTNB as a security guard at the downtown office for twenty-six years. Officer Snider of the Birmingham Police Department testified that he arrested appellant inside the downtown office of BTNB. The testimony was more than adequate to establish that BTNB had possession of the property upon which appellant entered.
III
The appellant’s next contention is that he was not tried by an impartial tribunal and, therefore, was denied due process of law under the Fourteenth Amendment to the United States Constitution. This issue has been raised for the first time on appeal. “An issue which is raised for the first time on appeal is raised too late for review.” Law v. State, Ala.Cr.App., 342 So.2d 412, *880 cert. denied, Ala., 342 So.2d 413, cert. denied, 434 U.S. 919, 98 S.Ct. 392, 54 L.Ed.2d 276 (1977).
IV
Appellant’s last contention is that the evidence was insufficient to support the conviction. The appellant made a motion to exclude the evidence at the conclusion of the City’s case. No grounds were stated. A motion to exclude without stating grounds is properly overruled. Espey v. State, 270 Ala. 669, 120 So.2d 904 (1960). In addition the appellant did not request the affirmative charge nor did he request a motion for new trial. Youngblood v. State, Ala.Cr.App., 338 So.2d 526 (1976).
AFFIRMED.
All the Judges concur.